## The Tupman Thurlow Company, Inc. *vs.* Woolf International Corporation.

No. 96-P-195.

Middlesex. January 10, 1997. - August 12, 1997.

Present: Perretta, Drebsen, & Jacobs, JJ.

*Arbitration,* Award, Judicial review. *Contract,* Arbitration. *Constitutional Law,* Full faith and credit. *Sale,* Contract of sale, Acceptance of goods.

A Massachusetts buyer of meat from a New York seller was bound by the conditions of sale set forth on the written confirmations of sale and on invoices for meat delivered, including an arbitration clause, and as a result, the buyer was bound by a judgment of a New York court affirming an arbitration award in favor of the seller for the price of meat sold and delivered. [337-340]

Civil action commenced in the Superior Court Department on January 11, 1994.

The case was heard by *Howard J. Whitehead,* J., on motions for summary judgment.

*Joseph C. Delcore* for the defendant.

*Harry P. Haveles* for the plaintiff.

Perretta, J. When the defendant, Woolf International Corp. (Woolf), failed to pay the plaintiff, Tupman Thurlow Co., Inc. (Tupman), for meat that it had purchased on June 9, 1992, Tupman commenced arbitration proceedings in New York. Woolf advised the arbitrator by letter that it would neither appear nor participate in the proceedings because, it claimed, there was no agreement to arbitrate. The arbitrator determined otherwise and awarded Tupman damages. The award was confirmed by the New York Supreme Court on Tupman's petition, which was served upon Woolf in Billerica by a Massachusetts constable. Tupman then brought this action seeking to enforce the New York judgment. On cross motions for summary judgment, a Superior Court judge concluded that Woolf had agreed to resolve

disputes with Tupman by arbitration proceedings in New York and, therefore, that Woolf was bound by the New York judgment.[1] We affirm.

1. *The undisputed facts.*[2] Tupman is a New York corporation engaged in the business of importing and wholesaling meat. Woolf is a Massachusetts corporation also engaged in the business of wholesaling meat. Between June, 1990, and June, 1992, Woolf purchased meat from Tupman on approximately sixty-five occasions.

On each of these sixty-five occasions, the purchasing procedure was as follows. Woolf would telephone Tupman and place an order that would include a description of the meat product, the quantity, and the price. Tupman would then mail a confirmation to Woolf, verifying the price and quantity of the product ordered as well as the terms of the sale. Thereafter, the product would be delivered along with a bill of lading. After delivery of the meat, Tupman would send Woolf a payment invoice which again set out the terms of the sale. The front of the invoice alerts the reader that: "Conditions of sale, including arbitration clause, set forth on reverse side are expressly agreed to and made part of this agreement which covers all matters agreed upon between the parties with reference to this sale and cannot be affected or varied in any way." The back of the invoice sets out eleven conditions of sale, one of which is controlling in this appeal. Paragraph nine of the conditions provides, in relevant part:

> "9. Arbitration: (a) In the case of fresh frozen meat sales, any controversy arising out of or relating to this contract shall be settled by arbitration in the city where the vendor has its principal place of business [New York City] in accordance with the rules of the American Arbitration Association as supplemented or modified by the Meat Importers Council of America, Inc.'s arbitration rules, as then prevailing . . . . This agreement so to arbitrate shall be

---

[1]Woolf filed a counterclaim alleging that, in an entirely different transaction, Tupman had sold it defective meat. The Superior Court judge allowed Tupman's motion for an order staying Woolf's counterclaim and compelling arbitration on that matter.

[2]On appeal, Woolf argues that a genuine issue of material fact is in dispute. See note 3, *infra.* We do not agree. The various materials submitted in support of the cross motions for summary judgment do not support this assertion.

specifically enforceable under the then prevailing arbitration law of the state of New York.

"Notice of the demand for arbitration shall be filed in writing with the other party to the contract and with the Meat Importers Council of America, Inc. . . .

"(b) Notwithstanding anything to the contrary contained in the above mentioned rules, the parties consent that any papers, notices, or process necessary or proper for the institution or continuance of, or relating to any arbitration proceeding, or for the confirmation of an award and entry of judgment on any award made, including appeals, may be served on each of the parties by registered mail addressed to the party at the principal office of the party, or by personal service on the party wherever located.

"(c) The arbitrators shall assess the cost of arbitration and their decision shall be final and binding on both parties.

"(d) Judgment upon the award rendered may be entered in any Court having jurisdiction or application may be made to such Court for a judicial confirmation of the award and an order of enforcement, as the case may be."[3]

On June 9, 1992, Tupman sold meat to Woolf at a cost of $45,792. The meat was delivered after the order confirmation form was sent. When Woolf did not pay the invoice, Tupman commenced arbitration proceedings and so notified Woolf of that fact in accordance with paragraph nine of the conditions of sale.

Woolf acknowledged receipt of notice of Tupman's demand for arbitration and, through counsel, answered that, because it neither signed a contract binding it to arbitrate nor agreed to the instant proceedings, the arbitrator lacked jurisdiction and it (Woolf) was not obligated to participate in the proceedings. Notwithstanding Woolf's stated position, the arbitrator gave it

[3]According to the unrefuted affidavit of the vice-president of finance of Tupman, the conditions of sale are also printed on the order confirmation forms. Because Tupman did not attach any of the confirmation forms to its affidavit, Woolf argues that we should infer that the forms did not exist and conclude that a material issue of fact is in dispute. It was, however, the burden of Woolf to assert the nonexistence of the forms. See *Commonwealth* v. *Andover*, 378 Mass. 370, 377 (1979).

notice of the date, time, and place of the hearing by registered mail and Federal Express.

Arbitration proceeded without Woolf, and the arbitrator determined that "Woolf had acceded to the arbitration clause [found on the confirmation slips and invoices] by a long course of commercial dealing as a merchant without ever objecting to, or questioning the arbitration clause" and that Tupman was entitled to payment. Tupman thereafter brought a petition in the Supreme Court of New York, seeking confirmation of the arbitrator's award. When the petition was served upon Woolf's attorney, he notified the New York court that he was "not authorized to accept service of any process on behalf of Woolf." Tupman withdrew the petition and filed a new one which was served by a constable upon Woolf's agent for service. Again, Woolf took no action, and the Supreme Court of New York granted Tupman's petition on Woolf's "default," and entered judgment on the arbitrator's award.[4]

2. *Recognition of the New York judgment.* "In the absence of certain defenses directed at the validity of a final judgment of a sister State (see, e.g., *Quinn* v. *Quinn,* 5 Mass. App. Ct. 794 [1977]; *Berrios* v. *Perchik,* 20 Mass. App. Ct. 930, 931-932 [1985]), Massachusetts will recognize and enforce that judgment. See *Wright Mach. Corp.* v. *Seaman-Andwall Corp.,* 364 Mass. 683, 688-689 (1974). See also Restatement (Second) of Conflict of Laws § 100 (1971) ('A valid judgment for the payment of money rendered in a State of the United States will be enforced in a sister State, except as stated in §§ 103-121')." *First Natl. Bank of Houma* v. *Bailey,* 29 Mass. App. Ct. 193, 197 (1990).

If the New York judgment is valid, it is by reason of paragraph nine of the conditions of sale set out in the sixty-five confirmation orders and invoices given Woolf by Tupman over a two-year period. See Restatement (Second) of Conflict of Laws §§ 24,[5] 27,[6] and 32[7] (1971). It is Woolf's argument that it was not bound by those conditions.

---

[4] The New York judgment recites that proof of service upon Woolf was filed with the court and makes reference to a "decision of this Court dated August 31, 1993." There is, however, nothing in the record before us which advises as to the nature of that "decision."

[5] "(1) A state has power to exercise judicial jurisdiction over a person if the person's relationship to the state is such as to make the exercise of such jurisdiction reasonable. (2) The relationships which are sufficient to support an exercise of judicial jurisdiction over a person are stated in §§ 27-52."

3. *The conditions of sale.* In determining the validity of the conditions of sale and, hence, the New York judgment, it makes no difference whether we apply the law of New York or Massachusetts.[8] The conditions are binding upon Woolf under the law of either forum.

Neither Woolf nor Tupman disputes the Superior Court judge's conclusion that whether the conditions of sale became part of their agreement is controlled by § 2-207(2) of the Uniform Commercial Code. See N.Y. U.C.C. Law § 2-207(2) (Law. Co-op. 1981); G. L. c. 106, § 2-207(2). As here relevant and as between merchants, that provision makes additional terms which are included in a written confirmation part of the parties' contract unless "they materially alter it."

In *Marlene Indus. Corp* v. *Carnac Textiles, Inc.*, 45 N.Y.2d 327, 333 (1978), the court held that an arbitration clause printed on the reverse side of a written acknowledgment of an order for goods was a material alteration of the proposed order. One year thereafter, in *Schubtex, Inc.* v. *Allen Snyder, Inc.*, 49 N.Y.2d 1, 6 (1979), a majority of the court concluded that a written provision for arbitration could be determined to have been incorporated into an oral agreement on the basis of evidence of a prior course of dealings between the parties. However, the evidence of two prior dealings was insufficient to support a determination that the provision for arbitration had, in fact, been incorporated into the written agreement.

It appears from the arbitrator's award, which was before the New York Supreme Court on Tupman's petition to confirm, that there was evidence (order acknowledgment forms and invoices setting out the conditions of sale) of *"many* other prior sales"

---

[6]"(1) A state has power to exercise judicial jurisdiction over an individual on one or more of the following bases: . . . (e) consent . . . (2) The circumstances in which, and the extent to which, these bases are sufficient to support an exercise of judicial jurisdiction over an individual are stated in §§ 28-39."

[7]"A state has power to exercise judicial jurisdiction over an individual who has consented to the exercise of such jurisdiction."

[8]Although paragraph eleven of the conditions of sale provides that the parties' agreement "shall be deemed to be governed by the laws of the State of New York," we review the agreement without reliance upon that paragraph. "It would seem illogical to allow any aspect of the . . . [conditions] to influence the direction of the case without first choosing the law and performing the analysis that determine whether the . . . [conditions] should be incorporated into, or excluded from, the parties' agreements." *Glyptal Inc.* v. *Engelhard Corp.*, 801 F. Supp. 887, 892 n.3 (D. Mass. 1992).

(emphasis supplied). See *Hatzlachh Supply Inc.* v. *Moishe's Electronics, Inc.*, 828 F. Supp. 178, 183-184 (S.D.N.Y. 1993) (finding incorporation of arbitration provision on the basis of the particular circumstances, forty-two transactions over a seventeen-month period, surrounding the parties' contractual relationship and ordering them to proceed to arbitration).[9] Moreover, in an affidavit filed in this action, Woolf's president acknowledged the history of prior dealings with Tupman.[10] Applying the law of New York, we conclude that Woolf was bound by the arbitration provision.

Neither the Supreme Judicial Court nor this court has had occasion to consider the validity of an arbitration provision incorporated into an oral agreement under G. L. c. 106, § 2-207. As construed by the United States Court of Appeals for the First Circuit, however, Massachusetts law would require enforcement of the arbitration provision on the basis that it was set out in the order confirmation forms which were received prior to the delivery of the goods. See *Roto-Lith, Ltd.* v. *F.P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir. 1962) ("Plaintiff accepted the goods with knowledge of the conditions specified in the acknowledgment"). See also *Winter Panel Corp.* v. *Reichhold Chemicals, Inc.*, 823 F. Supp. 963, 969 (D. Mass. 1993) (until the Massachusetts courts choose to depart from *Roto-Lith*, the Federal courts in the First Circuit remain bound by its holding); *Mead Corp.* v. *Stevens Cabinets, Inc.*, 938 F. Supp. 87, 89 (D. Mass.

---

[9]The judgment ordering the parties to proceed to arbitration was thereafter vacated, 848 F. Supp. 25, 27-28 (1994), on postjudgment motions showing the existence of a prior Texas judgment on the merits of the dispute between the parties.

[10]While acknowledging the extent of the prior dealings with Tupman, the affiant goes on to state that he never read the invoices, making no mention of the order confirmation forms, and that an arbitration provision is not customary in the meat importing business. These averments are without significance under both New York and Massachusetts law. See *Szymanski* v. *General Tire of Buffalo, Inc.*, 30 Misc. 2d 384, 390 (N.Y. Sup. Ct. 1961) ("Ignorance through negligence or inexcusable trustfulness is no ground for relief from contractual obligations"); *Sternheim* v. *Silver Bell of Roslyn, Inc.*, 66 Misc. 2d 726, 729 (N.Y. Civ. Ct. 1971) (evidence of trade usage inadmissible where admissible evidence showed parties had long history of dealing with each other). Accord *Kergald* v. *Armstrong Transfer Exp. Co.*, 330 Mass. 254, 255 (1953) ("Where what is given to a plaintiff purports on its face to set forth the terms of a contract, the plaintiff, whether he reads it or not, by accepting it assents to its terms . . ."); *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 673 (1985) ("A course of dealing between parties controls the interpretation of usage of trade").

1996) ("In Massachusetts, the party who fires the last, unchallenged shot will prevail in a contractual battle of the forms").

Although there has been much criticism of the *Roto-Lith* rule, see, e.g., Murray, The Chaos of the "Battle of the Forms": Solutions, 39 Vand. L. Rev. 1307, 1330-1343 (1986), that criticism does not apply to circumstances where the additional term is presented *prior* to acceptance of the goods. See *Glyptal Inc.* v. *Engelhard Corp.*, 801 F. Supp. 887, 893 (D. Mass. 1992), citing 1 White & Summers, Uniform Commercial Code § 1-5 (3d ed. 1988 & Supp. 1991). In its materials filed on its cross motion for summary judgment, Woolf never refuted the facts that the arbitration provision was set out on Tupman's order confirmation forms which preceded delivery of the order, that the conditions of sale were set out on the confirmation forms as well as the invoices, that Tupman followed this procedure in every transaction with Woolf, and that Woolf had a long history of dealings with Tupman. Rather, the only facts asserted by Woolf, through the affidavit of its president, were that the invoices were never read and that invoices from other meat importers with which it did business did not include an arbitration provision. But see note 10, *supra.*

On the undisputed facts, we conclude that Woolf was also bound under Massachusetts law by the conditions of sale appearing on the order confirmation forms and invoices. See *Roto-Lith, Ltd.* v. *F.P. Bartlett & Co.*, 297 F.2d at 500; G. L. c. 106, § 2-207. See also G. L. c. 106, §§ 1-201(3), 1-205(4), and 2-208(1).

It follows from what we have said that the judgment of the Supreme Court of the State of New York, New York County, is entitled to be recognized and enforced in Massachusetts.[11]

*Judgment affirmed.*

---

[11]Because Woolf was served with notice of the demand for arbitration and the petition for confirmation in accordance with paragraph nine of the binding conditions of sale, we need not consider the claim concerning improper service of process.