WILLOW VALLEY MANOR

v.

TROUVAILLES, INC.

Civil Action No. 96–CV–8201.

United States District Court,
E.D. Pennsylvania.

Sept. 15, 1997.

James H. Thomas, Blakinger, Byler & Thomas, Lancaster, PA, for Plaintiff.

Michael A. Freeman, Andrew J. Rogoff, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This case is before the Court on Defendant's Motion to Stay Plaintiff's Suit Pending Arbitration. For the reasons set forth below, the Motion will be denied.

### BACKGROUND

Plaintiff is a Pennsylvania nonprofit corporation which operates a retirement community in Lancaster, Pennsylvania. In November, 1994, plaintiff entered into an agreement with Defendant, a Massachusetts corporation in the business of supplying interior furnishings for residential and commercial use, for 435 chairs to be used in Manor's dining room. By this suit (which was originally commenced in state court) plaintiff contends that the chairs were not properly constructed, were not merchantable and were not fit for ordi-nary purposes or the purposes for which they were intended. Defendant thereafter removed the case to this court based on diversity jurisdiction and moved to stay this action pending arbitration.

Specifically, it is defendant's position that under its agreement with plaintiff, "[a]ny dispute, controversy or claim arising out of or relating to this contract or the breach thereof, shall be settled in accordance with the rules of the American Arbitration Association ..." This provision (among others) is contained in the form acknowledging the order which defendant sent almost immediately after receipt of plaintiff's purchase order and payment for one-half of the order. The provision also appears in the "pro forma" invoice which defendant sent to plaintiff on February 10, 1995 and the seven invoices which it sent plaintiff between March 21 and June 22, 1995. (Affidavit of David Israel, ¶ s 4–5, 7–8, attached as Exhibit "A" to Defendant's Motion for Stay. Also see, Exhibits "B"–"E").

As plaintiff never objected to the arbitration provision in any of these documents, defendant argues that the provision became a part of the parties' contract by operation of U.C.C. § 2–207. In response, plaintiff asserts that since the contract was formed when it accepted defendant's detailed price quote by sending its purchase order and the required deposit for 50% of the contract price, defendant's acknowledgment form did not constitute an acceptance of an offer made by plaintiff and the provisions included in the form fell outside the parameters of the parties' agreement. Alternatively, plaintiff argues that even if the court finds that the acknowledgment form constituted an acceptance, the inclusion of the arbitration clause is an additional term which materially altered the original contract and thus cannot be found to have become a part of the parties' agreement.

### DISCUSSION

Under the Federal Arbitration Act, 9 U.S.C. § 1, et. seq.,

"[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an

agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under an agreement in writing for such arbitration, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

9 U.S.C. § 3. Arbitration, of course, is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), citing *inter alia*, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Bristol Farmers Market v. Arlen Realty & Dev. Co.*, 589 F.2d 1214, 1217 (3rd Cir.1978).

Thus, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). The scope of an arbitration agreement is a question of federal law but state law governs whether the parties entered into an arbitration agreement. *ATD American Co. v. Imptex International, Inc.*, 1994 WL 193924, *4 (E.D.Pa.1994) citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) and *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45–46 (2d Cir.1993). In diversity cases, which state law applies depends on the choice of law rules of the state in which the federal court sits.

*National Iranian Oil Co. v. Mapco International, Inc.*, 983 F.2d 485, 493 (3rd Cir.1992) citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

In this action, the parties do not dispute that there was a contract between them whereby plaintiff would purchase from defendant 435 "Shelley B" armchairs at the unit price of $320 per chair for the total amount of $139,200. (Exhibits "A"—"B" to Defendant's Motion for Stay Pending Arbitration). It is further clear that plaintiff tendered the sum of $69,600 to defendant when it formally placed its order. (Exhibits "A"—"D"; Exhibit "A" to Plaintiff's Brief in Response to Defendant's Motion to Stay). As the parties' performance demonstrates the existence of a contract, we thus see no need to review the parties' various actions to decide exactly when the parties formed a contract as the dispute is not over the fact of its existence, rather the nature of its terms. *Step–Saver Data Systems, Inc. v. Wyse Technology*, 939 F.2d 91, 98 (3rd Cir.1991).

There is likewise no need for a conflict of laws analysis as the parties further agree that the question of whether they agreed to arbitrate is properly resolved in accordance with § 2–207 of the Uniform Commercial Code which has been adopted by both Pennsylvania and Massachusetts. *See, e.g.: Tupman Thurlow Co., Inc. v. Woolf International Corp.*, 43 Mass.App.Ct. 334, 682 N.E.2d 1378 (1997). Under the UCC, an expression of acceptance or written confirmation that includes additional or different terms operates as a legal acceptance of the offer notwithstanding the inclusion of the new terms. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1107 (3rd Cir.1992); 13 Pa. C.S.A. § 2207(a); Mass. Gen. Laws. ch.106, § 2–207(1). The statute goes on to provide that, between merchants, the additional terms become part of the contract unless the offer expressly limits acceptance to the terms of the offer, materially alter it,[1] or objection

---

1. Comment 4 to UCC § 2–207 suggests that a clause which might "materially alter" a contract are those which would result in surprise or hardship if incorporated without express awareness by the other party. *See: Step–Saver*, 939 F.2d at 104, n. 44; *Bergquist Co. v. Sunroc Corp.*, 777

F.Supp. 1236, 1245 (E.D.Pa.1991). Examples of such clauses are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in such circumstances as those warranties would normally attach; a clause reserving to the seller the power

to the additional terms is promptly made. *Altronics, supra;* 13 Pa.C.S.A. § 2207(b), *Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1575 (10th Cir.1984).[2]

It appears from the record before us in this case that plaintiff ·did not make any objection to the additional terms contained on the back of defendant's acknowledgment and invoice forms until this motion to stay proceedings was filed.[3] The question thus becomes whether or not the defendant here conditionally accepted the plaintiff's purchase orders contingent upon inclusion of its additional terms into the parties' agreement and whether the additional terms included on the back of the defendant's acknowledgment form and invoices materially alter the terms of the agreement. In resolving these issues, we are guided by the Third Circuit's analysis in *Step–Saver Data Systems, Inc. v. Wyse Technology,* and by Judge Ditter's decision in *Bergquist Co. v. Sunroc Corp.,* both *supra.*

At issue in *Step–Saver* was the applicability of a "box-top license" which limited the transferability of the software program purchased. There, the plaintiff, Step–Saver had, on numerous occasions, telephoned defendant, The Software Link ("TSL") and placed an order for copies of the program. TSL would accept the order and promise, while on the telephone, to promptly ship the goods. In follow-up to the telephone order, Step–Saver would send a purchase order, detailing the items to be purchased, their price, and shipping and payment terms. TSL would then ship the programs along with an invoice. While the invoices contained terms which essentially mirrored those on the purchase

orders, the packages in which the programs were shipped would contain copies of the box-top license. In addition to containing the term limiting the ability to transfer the program, the license also disclaimed all express and implied warranties except for a guarantee that the discs were free from defect, limited the remedies available to the buyer to a return of the product in exchange for full refund and contained an integration clause. The license further provided that by opening the package, the buyer indicated its acceptance of the additional terms and conditions. If the buyer did not accept the additional terms, it was required to return the unopened package to TSL for a full refund within fifteen days.

Step–Saver commenced an action for damages for breach of warranties and for misrepresentation. In reversing the district court's entry of a directed verdict in favor of TSL, the Third Circuit considered three issues: (1) whether the contract was sufficiently definite without the box-top license to be enforceable; (2) whether the box-top license constituted a conditional acceptance and counter-offer under § 2–207(1) and (3) whether Step–Saver, by continuing to order and use the software with notice of the terms of the box-top license, consented to the terms of the license.

The Court of Appeals quickly found with respect to the first issue that, since the parties had agreed to the specific goods involved, the quantity and the price apart from the box-top license, the contract was sufficiently definite without the license terms.

Next, in determining whether TSL's acceptance of plaintiff's purchase order was condi-

---

to cancel upon buyer's failure to meet any invoice when due; a clause requiring that complaints be made in a time materially shorter than customary or reasonable. 13 Pa.C.S.A. § 2207, Comment 4.

**2.** Specifically, § 2–207 states, in relevant part:
    **(1) General rule.**—A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
    **(2) Effect on contract.**—the additional terms are to be construed as proposals for addition to

the contract. Between merchants such terms become part of the contract unless:
    (1) the offer expressly limits acceptance to the terms of the offer;
    (2) they materially alter it; or
    (3) notification of objection to them has already been given within a reasonable time after notice of them is received.

**3.** Indeed, the affidavit of plaintiff's Chief Financial Officer in opposition to defendant's motion does not challenge defendant's assertion that it never objected to the arbitration clause at issue. (Exhibit "A" to Defendant's Motion for Stay of Proceedings; Exhibit "A" to Plaintiff's Response in opposition thereto).

tional on Step–Saver's assent to the terms of the box-top license, the Court of Appeals considered three tests and adopted that which required the offeree (TSL) to demonstrate an unwillingness to proceed with the transaction unless the additional or different terms were included in the contract. In so doing, the Court noted,

"... [W]e adopt the third approach for our analysis because it best reflects the understanding of commercial transactions developed in the UCC. Section 2–207 attempts to distinguish between: (1)1 those standard terms in a form confirmation, which the party would like a court to incorporate into the contract in the event of a dispute; and (2) the actual terms the parties understand to govern their agreement. The third test properly places the burden on the party asking a court to enforce its form to demonstrate that a particular term is a part of the parties' commercial bargain.

939 F.2d at 102.

Using that test, the Third Circuit then found that the type of language used by TSL in the box-top license did not operate to clearly express its unwillingness to proceed with the transactions unless its additional terms were incorporated into the parties' agreement. The box-top license therefore did not constitute a conditional acceptance under UCC § 2–207(1). *Id.*, at 103.

In resolving the third issue before it, the *Step–Saver* Court next held that "the repeated sending of a writing which contains certain standard terms without any action with respect to the issues addressed by those terms cannot constitute a course of dealing which would incorporate a term of the writing otherwise excluded under § 2–207." 939 F.2d at 104. The Court advanced two reasons in support of its conclusion. First, the repeated exchange of forms by the parties only tells the offeror that certain additional terms are desired. "Given TSL's failure to obtain Step–Saver's express assent to these terms before it will ship the program, Step–Saver can reasonably believe that, while TSL desires certain terms, it has agreed to do business on other terms—those terms expressly agreed upon by the parties."

Second, the Court held, "the seller in multiple transaction cases will typically have the opportunity to negotiate the precise terms of the parties' agreement ... the seller's unwillingness or inability to obtain a negotiated agreement reflecting its terms strongly suggests that, while the seller would like a court to incorporate its terms if a dispute were to arise, those terms are not a part of the parties' commercial bargain." *Id.*

■ In application of the foregoing principles, we cannot find that defendant has met its burden of showing plaintiff's express assent to the additional terms and conditions printed on the reverse sides of the acknowledgment and invoice forms. To the contrary, as the Affidavits of both plaintiff's Chief Financial Officer and Trouvailles' President attest, after receiving the plaintiff's purchase order and $69,600 check, defendant acknowledged the order and subsequently shipped the chairs. (Exhibit "A" to Defendant's Motion for Stay; Exhibit "A" to Plaintiff's Memorandum of Law opposing Defendant's Motion for Stay). There is no evidence whatsoever that Trouvailles expressly conditioned the contract on Willow Valley's acceptance of the additional terms.

■ The evidence further demonstrates that at no time did Manor expressly assent to incorporation of the additional terms printed on the back of defendant's acknowledgment form and invoices. Manor simply "did not object." (Exhibit "A" to Defendant's Motion for Stay, at ¶ 5–10). As *Step–Saver* makes clear, express assent is necessary to a finding of conditional acceptance and the mere repeated sending of a writing containing additional terms does not, without more, give rise to modification of the existing agreement. Accordingly, this Court, like the Court of Appeals in *Step–Saver*, finds that defendant did not conditionally accept plaintiff's purchase order contingent upon plaintiff's acceptance of the arbitration clause.

■ We next must evaluate whether the arbitration clause contained in the defendant's acknowledgment and invoice forms "materially altered" the terms of the parties' agreement. If the arbitration clause was not a material alteration, it may become part of

the contract if a timely objection is not made thereto. If it was a material alteration, it could only become part of the contract if plaintiff manifested its assent to its inclusion. *Bergquist Co. v. Sunroc Corp.,* 777 F.Supp. 1236, 1244 (E.D.Pa.1991).

The court in *Bergquist* was faced with a nearly identical set of facts to those presented here. After finding that the parties had entered into three agreements regarding the sale and purchase of heating tapes for use in the manufacture of defendant's water coolers, the court applied the "modern" approach to determine whether the arbitration provision contained in defendant's purchase orders was a "material alteration" under UCC § 2–207(2)(b). Under that approach, the particular facts of each case are examined focusing on the degree of "surprise" or "hardship" imposed upon the nonassenting party. As the *Bergquist* court observed,

> [u]nder that analysis, whether an additional term materially alters a contract should not be determined upon a summary judgment motion because the inquiry is merely part of the process to ascertain the parties' bargaining intent ... However, summary judgment may be appropriate when the parties cannot honestly dispute that a term would result in surprise or undue hardship unless both parties agree to its inclusion.

777 F.Supp. at 1245, citing *Trans–Aire International, Inc. v. Northern Adhesive Co.,* 882 F.2d 1254 (7th Cir.1989).

In this case, we likewise cannot determine from the record before us whether plaintiff was or should have been surprised by inclusion of the arbitration clause in the agreement. Certainly, the affidavits submitted in support of and in opposition to this motion dispute the circumstances under which the agreement was negotiated and the extent to which these parties had prior dealings. It will therefore be up to plaintiff to develop evidence to show that it neither knew nor had reason to know of the arbitration clause and of its incorporation into the contract. *See: Step–Saver,* at 104; *Bergquist,* at 1246.

As for hardship, the relevant issues are whether the arbitration provision would impose substantial economic hardship on the nonassenting party or would substantially alter the distribution of risk between the parties. *Bergquist,* at 1246, citing *Step–Saver* at 105 and *Trans–Aire* at 1262. Here again, as we have only very brief argument contained in the parties' legal memoranda in support of and contra the instant motion, the record before us is insufficient to permit a finding on whether plaintiff would suffer hardship if compelled to arbitrate this matter. The issue of whether the arbitration clause constitutes a material alteration to the terms of this contract therefore cannot be resolved at this time.

### CONCLUSION

Defendant's motion to stay this suit pending arbitration will therefore be denied without prejudice at this time. The parties are free to conduct discovery and develop a complete record with respect to this issue in order that it may re-visited should defendant so desire by motion for summary judgment.

An appropriate order follows.

### ORDER

AND NOW, this 15th day of September, 1997, upon consideration of Defendant's Motion to Stay Plaintiff's Suit Pending Arbitration and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is DENIED without prejudice.