IRWIN BISHINS & another[1] *vs.* RICHARD B. MATEER, P.A.[2]

No. 02-P-1399.

Bristol. January 7, 2004. - June 30, 2004.

Present: McHUGH, COHEN, & GREEN, JJ.

*Partnership,* Limited partnership, Agreement. *Securities,* Interest in limited partnership. *Sale,* Real estate. *Assignment. Uniform Limited Partnership Act. Constitutional Law,* Full faith and credit. *Judgment.*

In a civil action brought by a limited partnership and one of its general and limited partners to establish ownership in certain shares in the limited partnership which the partner had conveyed to a third party (who in turn had assigned those shares to the defendant as security on a note), and in real estate that the partnership owned, a Superior Court judge properly entered summary judgment in favor of the defendant to the extent that the judgment gave full faith and credit to a Florida judgment that allowed the defendant to foreclose on the interest in the partnership that secured the third party's note, but no reasonable view of the Florida foreclosure judgment suggested that that judgment conferred on the defendant an interest in the limited partnership's real estate. [428-431]

CIVIL ACTION commenced in the Superior Court Department on December 29, 1997.

The case was heard by *Peter W. Agnes, Jr.,* J., on motions for summary judgment.

*Gregory J. Koldys* for the plaintiffs.

*Donald J. Fleming* for the defendant.

McHUGH, J. Multistate commercial and marital entanglements produced a controversy over entitlement to shares of a Massachusetts limited partnership and an interest in the real estate the limited partnership owns. A judge of the Superior Court allowed a motion for summary judgment in favor of Richard B.

---

[1]Bedford Limited Partnership.

[2]Designation for a professional corporation under Florida law. See Fla. Stat. ch. 321.12 (2003).

Mateer, P. A. (Mateer), a Florida claimant who contends that he owns both the shares and the real estate. The limited partnership and Bishins, one of its general and limited partners, appeal. We affirm in part and reverse in part.

We describe the undisputed facts only with detail sufficient to understand the pertinent legal issues. Everything begins with the marriage of Irwin Bishins and Marcia Stone on April 7, 1983. The day before their marriage, Bishins and Stone signed an antenuptial agreement pursuant to which Bishins gave Stone a twenty-five percent interest in Bedford Limited Partnership (Bedford).

Bedford had been formed in May of 1973 to own and manage a building in New Bedford. The partnership agreement stated that limited partnership interests were assignable provided that the assigning partner complied with certain provisions of the agreement. Bishins's gift to Stone complied with those requirements, and Stone became a limited partner.

Strife soon blossomed and, in January of 1989, Stone filed for divorce in Palm Beach County, Florida. A decree of divorce entered in November of that year. In a November 4, 1989, agreement incorporated in the divorce judgment, Stone reassigned to Bishins a ten percent interest in Bedford. The assignment was in proper form and left Stone with a fifteen percent interest in Bedford.

Mateer is a Florida professional corporation which represented Stone in the divorce. Stone's legal fees amounted to approximately $40,000. Instead of paying that fee, Stone signed a promissory note and, as security, executed a "chattel mortgage" assigning to Mateer her fifteen percent interest in Bedford.[3]

On March 21, 1991, Stone commenced an action in Superior Court seeking a dissolution of Bedford. The resolution of that action is not entirely clear from the record, although it is

[3]That was neither the first nor the last of Stone's assignments of her interest in Bedford. On July 29, 1988, before her assignment to Mateer, she had pledged her Bedford interest to an individual named Westrich to secure a note in the amount of $146,000 which she and Bishins had cosigned. On May 14, 1990, after the assignment to Mateer, she pledged her Bedford interest to Admiralty Bank to secure a note in the amount of $45,000. That pledge came approximately three months after she offered, through counsel, to sell her Bedford interest to the Bedford limited partners for $1 million.

apparent that Bedford still exists. In May, 1991, Bishins responded by commencing an action for fraud in a State court of Pennsylvania. In his complaint, Bishins alleged that Stone had fraudulently concealed from him the existence of several previous husbands and children, the financial arrangements attending her extrication from several former marriages, her then-existing marriage to one of the earlier husbands, and her status as an illegal alien in the United States.[4]

Stone was served and initially appeared, through counsel, to defend the action. Her counsel, however, withdrew his appearance and the action proceeded to trial, jury-waived, apparently without Stone's participation. The result consisted of factual findings to the effect that Bishins's allegations of fraud were accurate and a judgment, dated October 13, 1994, voiding the April 6, 1983, antenuptial agreement, Bishins's conveyance to Stone of the interest in Bedford, and the November 4, 1989, agreement reconveying part of that interest back to Bishins.[5] Mateer was not notified of, and did not participate in, the Pennsylvania proceedings.[6]

On December 1, 1995, Mateer commenced, in a Florida court, an action against Stone seeking payment of the note and foreclosure on the fifteen percent interest in Bedford securing that note. Mateer did not notify either Bedford or Bishins that he had brought the foreclosure action. Stone defaulted, and the

---

[4]In January of 1992, Bishins followed the fraud action with an action against Stone in the Pennsylvania Family Court for "annulment" of their marriage on the theory that Stone's preexisting marriage to someone else rendered Stone's marriage to Bishins void from the outset. Bishins also argued that because no marriage ever existed, the Florida divorce decree was invalid. The record contains no suggestion that Bishins ever made that argument to the Florida court that had granted the divorce. The Pennsylvania annulment action languished until it was finally dismissed on October 2, 2001.

[5]The Pennsylvania court's decision says that the parties entered the November 4 agreement "in anticipation of disposition of a divorce action." None of the findings, however, mentions that the agreement was subsequently incorporated in the divorce decree. The pretrial memorandum and memorandum of law Bishins submitted to the court discuss the agreement at some length but do not mention that it was incorporated in the divorce decree. It is not clear, therefore, that Bishins ever brought the incorporation to the attention of the Pennsylvania judge.

[6]It is not clear from the record whether that judgment was final, but finality or lack thereof is irrelevant to the result we reach here.

matter was scheduled for a hearing on an assessment of damages. Notice of the hearing was sent to Bedford, although no effort had been made to name Bedford as a party, but the notice was returned for what appears to have been a wrong address. Without opposition, therefore, a judgment allowing Mateer to foreclose on his security interest and a notice of sale of that interest entered in October and November, 1997, respectively. The judgment described the foreclosed collateral in the following terms:

> "Fifteen percent (15%) Interest as a limited partner in the BEDFORD LIMITED PARTNERSHIP, a limited partnership existing under the laws of the Commonwealth of Massachusetts. *Property address*: 1 Riverside Avenue, New Bedford, Massachusetts. *Legal description*: Assessors Plot 100 — Lots 12, 13, 14, 15, 17, 18, 27, 29, 30, 31, 44, 45, 47, 48, 61, 63, 78, 79, 80, 81, 86, 102, 106, 107, 111, 113, 114, and 123. Consisting of land with an approximate area of 6.99 acres and improved by a two-story industrial brick building having an approximate area of $125,000 [*sic*] S.F. on each floor, whose primary purpose would be for industrial use."

On December 24, 1997, Bishins and Bedford, who had been somehow alerted to the Florida proceedings, moved to intervene and stay the foreclosure sale.[7] Their motion was promptly allowed.

On December 29, 1997, Bishins and Bedford commenced this action in Superior Court. In it, they sought enforcement of the Pennsylvania fraud judgment invalidating Bishins's conveyance of an interest in Bedford to Stone along with declarations that Stone had no interest in Bedford and that Mateer had neither an interest in Bedford nor in the real estate that Bedford owned.

For a short while, the two actions proceeded simultaneously. The Florida action was resolved first. On March 3, 1998, a judge of the Florida Circuit Court held a hearing on the motion to stay the foreclosure sale and Mateer's opposing motion to set

---

[7]The Florida docket reveals only Bedford's motion to intervene. At the ensuing hearing, however, counsel stated that he was appearing both for Bedford and for Bishins.

a new sale date. Mateer's attorneys argued that Bishins should have raised in the Florida courts the matters Bishens had litigated in Pennsylvania. Bishins argued that the Massachusetts courts should decide whether the Pennsylvania judgment vitiated any interest Mateer might have had in Bedford. Importantly, Bishins did not argue that the foreclosure judgment should be vacated so that Bedford could have an opportunity to litigate the extent of Mateer's interest in the property on which he sought to foreclose, and Mateer did not argue that the security interest he possessed was in fact a security interest in anything other than what Stone herself possessed and was capable of assigning.[8] The judge rejected Bedford's request to stay the foreclosure sale and entered an order setting a new date for the sale. The sale was held on that April 6, 1998, and Mateer purchased the collateral.

Following the sale, the Florida court clerk issued a so-called "clerk's certificate of title" to Mateer containing a description of the collateral in the form previously quoted. Bedford and Bishins filed a motion to change the description on the certificate of title to eliminate all references to anything other than the limited partnership interest. However, they withdrew that motion before the Florida court took any action on it.

Meanwhile, in Massachusetts, Mateer had filed a counterclaim alleging breach of fiduciary duty, fraud, and a violation of the Racketeer Influence and Corrupt Organization (RICO) Act. Both sides moved for summary judgment. The motion filed by Bishins and Bedford simply asked for summary judgment. Ma-

---

[8]In that regard, Bishins and Bedford here argue that the terms of the limited partnership agreement prohibited Stone from assigning her limited partnership interest in Bedford without the consent of all Bedford's general and limited partners. That contention is doubtful. Paragraph 16(B) of the limited partnership agreement says that "[t]he limited partnership interest of each limited partner shall be assignable, subject to the provisions of Paragraphs 16(D) and 16(E) hereof." Paragraph 16(D) pertains to offers to purchase the limited partnership interest and paragraph 16(E) involves transfers to family members. Neither paragraph applies to this case. Under the terms of the partnership agreement and the Uniform Limited Partnership Act, however, Mateer's foreclosure on Stone's interest in Bedford entitled Mateer's to receive the distributions to which Stone would be entitled, but did not make Mateer a limited partner in Bedford. See *Bricklin* v. *Stengol Corp.*, 1 Conn. App. 656, 666-669 (1984); Fla. Stat. ch. 620.152 (2003); G. L. c. 109, § 40. Nothing in the Florida foreclosure judgment suggests otherwise.

teer's motion sought "partial summary judgment" on the question "whether the court must give full faith and credit to" the Florida judgment awarding him Stone's fifteen percent interest in Bedford "and actually [conveying to Mateer] title of the [fifteen percent] interest and the real estate owned by Bedford." A judge of the Superior Court denied Bishins's motion and allowed Mateer's. The resulting judgment, finalized for our purposes by an order issued pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), provides as follows:

> "As to that portion of Count II that relates to the so called 'Second Florida Judgment' which awards Defendant Mateer a [fifteen percent] interest in Bedford and Bedford's real estate holding, it is ORDERED, ADJUDGED and DECLARED that said judgment shall be given full faith and credit and shall determine the rights of the parties."

From that judgment, Bishins and Bedford appeal.

There is no question that the full faith and credit clause of the United States Constitution, art. IV, § 1, requires Massachusetts courts to recognize a final judgment obtained in another State as long as the judgment-rendering State possessed personal jurisdiction over the parties and jurisdiction over the subject matter of the action in which the judgment was rendered. See generally *Cavanagh* v. *Cavanagh*, 396 Mass. 836, 839 (1986); *Bassett* v. *Blanchard*, 406 Mass. 88, 90 (1989). The Florida court had jurisdiction over Mateer at the time the foreclosing judgment was entered, and neither Bedford nor Bishins suggests that the court lacked jurisdiction over Stone. Before the sale occurred, Bedford and Bishins voluntarily appeared in the action in an effort to prevent the sale from occurring. Whatever might have been the case had they not done so, the Florida court had jurisdiction over them as a result of their appearances. See *First Wisconsin Natl. Bank of Milwaukee* v. *Donian*, 343 So. 2d 943, 944-945 (Fla. Dist. Ct. App. 1977). Consequently, the final judgment of foreclosure is entitled to full faith and credit in Massachusetts.

Bishins and Bedford, however, argue that in according the Florida judgment ordering the sale of the collateral full faith and credit, the principles announced in *Wright Mach. Corp.* v.

*Seaman-Andwall Corp.*, 364 Mass. 683, 690-692 (1974), must be taken into account. There, the Supreme Judicial Court held that when two prior judgments deal with the same subject matter in different ways, a third court is required to give full faith and credit to the more recent of the prior judgments. Bishins and Bedford suggest, therefore, that the Pennsylvania judgment is the judgment that Massachusetts courts must honor because it was rendered after the Florida divorce judgment. The Pennsylvania judgment, Bishins continues, voided his conveyance of the Bedford shares to Stone and left Mateer with no collateral on which to foreclose.

The difficulty with that argument is that this case involves three, not two, prior out-of-State judgments: the Florida divorce judgment, the Pennsylvania fraud judgment, and the Florida foreclosure judgment. *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, *supra*, embodies the principle that where successive out-of-State judgments deal with the same subject matter, the courts of this Commonwealth must honor the judgment last rendered. See *Thoma* v. *Thoma*, 123 N.M. 137, 141 (Ct. App. 1997) ("when different states render inconsistent judgments, the general rule is that the judgment entered last is entitled to full faith and credit"); Restatement (Second) of Conflict of Laws § 114 (1971); Restatement (Second) of Judgments § 15 (1982). The rule is based on the expectation that each successive judgment will deal with the immediately prior judgment in a manner that accords it full faith and credit. As a result, giving full faith and credit to the judgment entered last in time gives to each of the prior judgments the respect the Constitution demands.[9] *Sutton* v. *Leib*, 342 U.S. 402, 406-408 (1952). *Thoma* v. *Thoma*, *supra* at 141. Reynolds, The Iron Law of Full Faith and Credit, 53 Md. L. Rev. 412, 412-413 (1994). See generally Ginsburg, Judgments in Search of Full Faith and Credit: The Last-in-Time Rule For Conflicting Judgments, 82 Harv. L. Rev. 798 (1969). Accordingly, summary judgment in favor of Mateer was rightly

[9]Each successive court must deal with a number of issues affecting the judgment immediately preceding it. In this case, for example, the Florida court had to consider whether the Pennsylvania judgment was a final judgment. See note 6, *supra*. Only by crediting the last judgment can one insure that the underlying decisions remain intact and are fully acknowledged in subsequent litigation.

entered in this case to the extent that the judgment gave full faith and credit to the Florida foreclosure judgment.

That said, interpretation of an out-of-State judgment presents questions for the enforcing State to answer according to its own laws. If, for example, an out-of-State judgment is ambiguous, the judgment's meaning is to be determined by reference to the enforcing State's rules for resolving documentary ambiguities, see *Williams* v. *Miller*, 794 P.2d 23, 26 (Utah App. 1990), with the caveat that the judgment should be construed so that it retains some content and is not turned into an empty husk, the honoring of which would be pointlessly ceremonial. See *Bricklin* v. *Stengol Corp.*, 1 Conn. App. at 656, 668 (1984). See generally *Bennett* v. *Bennett*, 208 Or. 524, 529 (1956); *Wall* v. *Borosky*, 850 So. 2d 351, 354-355 (Ala. Civ. App. 2002); 46 Am. Jur. 2d Judgments § 94 (1994); 50 C.J.S. Judgments § 534 (1994).[10]

We make that observation because Mateer's contention that the Florida judgment entitles him not only to a fifteen percent interest in the limited partnership, but also to fifteen percent of the real estate the limited partnership owns, simply cannot withstand analysis of the record on which the judgment is based, even if that contention has a weak toehold in the content of the judgment itself. See generally Restatement (Second) of Contracts § 202 (1981).

On this record, there is no question that Stone's only interest in Bedford was an interest in the limited partnership. Under the Uniform Limited Partnership Act, which was in effect both in Florida and in Massachusetts, see Fla. Stat. chs. 620.101 to 620. 205 (2003)[11] and G. L. c. 109, an interest in the partnership is an interest separate and distinct from an interest in the limited partnership's assets. See Fla. Stat. ch. 36, § 620.153 (2003), and G. L. c. 109, § 41. Moreover, the "chattel mortgage" by which Stone assigned her limited partnership interest to Mateer described the collateral as Stone's limited partnership interest,

---

[10]Questions about the legal effect of an unambiguous out-of-State judgment, on the other hand, are determined by the laws of the jurisdiction where the judgment was rendered. See *Heron* v. *Heron*, 428 Mass. 537, 538-539 (1998); Restatement (Second) of Conflict of Laws § 95 and comments c and g (1971).

[11]The Florida act is entitled the "Florida Revised Uniform Limited Partnership Act (1986)." Fla. Stat. ch. 320.101 (2003).

not the real estate, and listed the limited partnership "address" and "legal description" in a column headed "Location, etc." Thus, the "chattel mortgage" assigned to Mateer only the limited partnership interest and then went on to provide the address and legal description of the limited partnership's assets.

The foreclosure complaint Mateer filed in the Florida court stated that he had commenced the action "for the purpose of foreclosing upon a chattel mortgage executed by [Stone] in favor of [Mateer] encumbering [Stone's] Fifteen Percent (15%) Interest as a limited partner in the BEDFORD LIMITED PARTNERSHIP, a limited partnership existing under the laws of the Commonwealth of Massachusetts." The complaint did not contain a single word, hint, or suggestion that Mateer sought, or otherwise perceived himself to be entitled to anything other than the percentage interest in the limited partnership.

Finally, at the hearing in Florida attended by counsel for Bishins, Bedford, and Mateer, Mateer's attorney told the court that Stone "secured the payment of [her] fee obligation [to Mateer] with a security interest in an ownership that [she] had in a limited partnership up in New England. This is an action that's been brought by [Mateer] against [Stone] for collection of that fee and for the foreclosure of that security interest." Mateer's attorney did not utter a single word at that hearing suggesting that Mateer had any interest in the real estate. Indeed, when his turn came, the attorney for Bishins and Bedford said, among other things, that Mateer had mistakenly filed the Uniform Commercial Code statement in the Bristol County registry of deeds, "which has only to do with land." In rebuttal, counsel for Mateer never suggested that the registry filing was proper.

From all that appears, Mateer's assertion that he somehow acquired an interest in Bedford's real estate is the kind of overreaching ambush characteristic of both sides' conduct in this protracted multistate struggle. No reasonable view of the Florida foreclosure judgment, on its face or in the context of the record that produced it, suggests that that judgment confers on Mateer an interest in Bedford's real estate. To the extent that the grant of summary judgment suggests otherwise, the summary judgment was in error.

Accordingly, the judgment entered in the Superior Court is

vacated. The case is remanded to that court with instructions to enter a new judgment declaring that the defendant, Richard B. Mateer, P.A., by virtue of the judgment entered on October 17, 1997, in the action styled Mateer *vs.* Bishins, Fla. Cir. Ct., No. CL 95-9573-AJ, has acquired Stone's fifteen percent interest in the plaintiff Bedford Limited Partnership, but that Richard B. Mateer, P.A., does not have a fifteen percent interest in the real estate that the limited partnership owns.

*So ordered.*