KEVIN C. PURVIS *vs.* COMMISSIONER OF CORRECTION &
another.[1]

No. 89-P-310.

Suffolk. June 12, 1990. - August 28, 1990.

Present: BROWN, PERRETTA, & GILLERMAN, JJ.

*Imprisonment*, Reclassification hearing. *Administrative Law*, Regulations.
*Appeals Court*, Summary disposition.

In an action by a prison inmate claiming that the Department of Correc-
tion deviated from its own regulations in not affording him a reclassifi-
cation hearing before his transfer to a higher custody status, it was er-
ror to enter summary judgment in favor of the defendants where it did
not appear, by affidavit or otherwise, that an "emergency" existed, and
where the question whether the plaintiff was an "escape" risk, as the
defendants suggest, appeared on the record to be a question requiring
resolution in an evidentiary or fact-finding proceeding. [191-192]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 23, 1987.

Motions for summary judgment were heard by *John Paul
Sullivan*, J.

*Peter Costanza* (*Barry Barkow* with him) for the plaintiff.
*Lena M. Wong* for the Commissioner of Correction &
another.

BROWN, J. We are once again presented with a challenge
by a prisoner to the process by which he was transferred to a
higher custody status. The specific defect claimed here is
that the prisoner was not afforded a reclassification hearing
as matter of State law before his transfer to the higher cus-
tody status.[2] See *Blake* v. *Commissioner of Correction*, 390

---

[1]Superintendent, M.C.I., Lancaster.

[2]The volume and frequency of prisoner cases in which, as here, the pri-
mary complaint involves a perceived deviation from the Department of
Correction's own regulations points out most dramatically the need for

Mass. 537, 537-538 (1983); 103 Code Mass. Regs. 420.13 (1978).

Notwithstanding the fact that the prisoner was given a hearing before the classification board sixteen days after his transfer to the higher custody status,[3] the entry of summary judgment in favor of the defendants was error, as, on review of the record before the Superior Court judge, we cannot say that there is no genuine dispute as to any material fact or that either party is entitled to judgment as matter of law.[4]

At the time of the prisoner's transfer, the applicable regulation of the Department of Correction was 103 Code Mass. Regs. 420.13 (1978). In his decision, the Superior Court judge, however, relied on 103 Code Mass. Regs. 420.09 (1987), which came into effect after the transfer. The judge apparently also based his decision on what he perceived to be the "emergency" nature of the situation. From language in 103 Code Mass. Regs. 420.13(2)(b) (1978) (prisoner may be placed in "awaiting action status" pending hearing or final decision on transfer where there is "an immediate threat to the health or safety of the resident or to others"), the defendants and the judge apparently extrapolate the concept of

---

careful and thoughtful initial drafting and continuous scrutiny and review of these regulations. Unless this is done, the limited resources of the trial and appellate courts will, unfortunately, too often be diverted from the genuine and substantial concerns of prisoners to what sometimes appear to be self-inflicted wounds on the part of the Department.

[3]The Superior Court judge determined that, pursuant to the recommendation of the classification board, the plaintiff was subsequently (apparently about two months after the classification hearing) returned to minimum custody status, "the status he apparently sought to regain," although at a different institution.

[4]In his complaint the plaintiff claims that the procedure required by the applicable regulations was not followed and that because of the transfer (1) his likelihood of receiving parole when eligible was reduced, (2) his opportunity to be considered for a placement in a work release program was delayed, (3) he lost earnings from prison employment, (4) his conditions of confinement are more adverse than those at M.C.I., Lancaster, and (5) he lost personal property during the transfer. Although these claims may prove to lack persuasive substance, we are unable to conclude that these issues are moot and that entry of summary judgment on behalf of the defendants was warranted, because it has not been shown that there is no factual basis to any of these claims.

emergency transfers.[5] Compare 103 Code Mass. Regs. 420.09(3)(a) (1987) (inmate may be transferred prior to classification hearing if "security needs so dictate"; such a prehearing transfer must be approved by Commissioner or designee prior to its occurrence). Nowhere, however, has it been made to appear, by affidavit[6] or otherwise, that an "emergency" existed. Further, whether the plaintiff was an "escape" risk, as the defendants suggest (see note 5, *supra*), appears on this record to be a question requiring resolution in an evidentiary or fact-finding proceeding.

With respect to the Department's claim of qualified immunity, under the applicable standard in these circumstances the governmental officials would be "shielded from liability for civil damages" if, at the time of the challenged actions, "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 & n.30 (1982). *Duarte* v. *Healy*, 405 Mass. 43, 47 (1989). The test is the "objective reasonableness" of the officials' conduct. *Harlow* v. *Fitzgerald*, *supra*. See also *Duarte* v. *Healy*, 405 Mass. at 48, quoting from *Davis* v. *Scherer*, 468 U.S. 183, 190 (1984).

The judgment is vacated and the case is remanded to the Superior Court to stand for further proceedings that are not inconsistent with this opinion.

*So ordered.*

---

[5]The defendants also cite in support of this concept a decision issued pursuant to Rule 1:28 of this court. Without assessing any similarities and differences between that case and the present one, we note that unpublished decisions of this court are not to be relied upon or cited as authority in unrelated cases. *Lyons* v. *Labor Relations Commn.*, 19 Mass. App. Ct. 562, 566 & n.7 (1985), *S.C.*, 397 Mass. 498 (1986). *Wolbach* v. *Beckett*, 20 Mass. App. Ct. 302, 306 n.5 (1985).

[6]An affidavit filed in support of the defendants' motion for summary judgment states that the plaintiff had reported late for a work assignment and that because of his behavior and attitude he was determined to be an "escape risk."