Sosman, J.
Plaintiff Claridge at Park Place, Inc. (“Claridge”) has brought the present action seeking to enforce a judgment that it obtained against defendant Toros Matellian in the Superior Court of New Jersey. Claridge has moved for summary judgment. Matellian opposes the motion, arguing that the New Jersey court lacked jurisdiction over him and that the judgment for a gambling debt should not, as a matter of public policy, be enforced in Massachusetts. For the following reasons, plaintiffs motion is allowed.
Facts
Claridge operates a gambling casino in Atlantic City, New Jersey. Matellian, a resident of Massachu *427 setts, went to New Jersey in the fall of 1991 and, while there, issued checks totaling $30,000 to Claridge. The checks were issued for purposes of gambling at Claridge’s casino. When Claridge attempted to deposit the checks, they were returned for insufficient funds.
On June 28, 1993, Claridge filed suit against Matellian in the Superior Court of New Jersey. A summons was issued and mailed to Matellian in Massachusetts via certified mail on July 1, 1993. On July 9, 1993, Matellian filed a Special Appearance and Motion to Dismiss, arguing that the New Jersey court did not have jurisdiction over him. The motion was denied on August 10, 1993. Thereafter, Matellian did not file any answer to the New Jersey complaint. On August 22, 1994, the Superior Court of New Jersey entered a Final Judgment by Default against Matellian in the amount of $34,762.50.
On August 17, 1995, Claridge filed the present action seeking to enforce the New Jersey judgment.
Discussion
1. Jurisdiction of the New Jersey Superior Court
Matellian argues that the Superior Court of New Jersey did not have jurisdiction over him. The argument is specious. Matellian went to New Jersey, patronized plaintiffs establishment while there, and issued checks to Claridge in order to gamble at Claridge’s casino. Subjecting him to the jurisdiction of the New Jersey court under New Jersey’s long-arm statute for the purpose of adjudicating a dispute arising out of Matellian’s transactions while in New Jersey does not offend due process.[1] Based on the undisputed facts, the Superior Court of New Jersey had jurisdiction over Matellian.
2. Enforcement of gambling debt
Matellian argues that this court should not recognize the New Jersey judgment because it is based on a gambling debt. In Massachusetts, “[njotes, bills, bonds, mortgages or other securities or conveyances the whole or part of the consideration of which is . . . for repaying or reimbursing money knowingly lent or advanced for gaming or betting, or lent and advanced at the time and place of such gaming or betting to a person so gaming or betting, shall be void as between the parties.” G.L.c. 137, Sec. 3. Thus, Massachusetts does not recognize a claim on checks issued for purposes of gambling. This is so even if the gambling debt was legal where incurred. See Connecticut National Bank v. Kommit, 31 Mass.App.Ct. 348, 350 (1991).
However, the present case is not an action on the gambling debt itself. It is an action to enforce a judgment that has already been rendered in another court. The full faith and credit clause of the United States Constitution requires that “(f]ull faith and credit shall be given in each State to the Public Acts, Records, and judicial proceedings of every other State.” U.S. Const., Art. 4, Sec. 1.
It is the judgment and not the cause of action which gave rise to it for which credit is claimed, and this constitutional mandate requires credit to be given to a money judgment rendered on a civil cause of action in another state even though the forum would have been under no duty to entertain the suit on which judgment was founded.
Titus v. Wallick, 306 U.S. 282, 291 (1939)(emphasis added). Thus, the fact that G.L.c. 137, Sec. 3 would have prevented Claridge from bringing the underlying claim on the gambling checks here in Massachusetts does not allow this court to deny full faith and credit to the judgment of the New Jersey court.
Matellian finally argues that G.L.c. 235, Sec. 23A prevents the court from enforcing this judgment. The statute provides that a “foreign judgment” is not to be recognized if “the cause of action on which the judgment is based is repugnant to the public policy of this state.” Inasmuch as there is a clear public policy (as enunciated in G.L.c. 137, Sec. 3) against collection of gambling debts, Matellian contends that G.L.c. 235, Sec. 23A requires this court to deny enforcement of the New Jersey judgment as a “foreign judgment.”
Matellian’s argument ignores the definition of “foreign judgment” in the statute itself. The final paragraph of Section 23A defines “foreign judgment” as “any judgment of a foreign state granting or denying recoveiy of a sum of money.” The term “foreign state” is defined as “any governmental unit other than the United States, or any state, district, commonwealth, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands.” Id. (emphasis added). Thus, Section 23A refers to judgments of foreign countries, not to judgments of sister states that are already recognized under the full faith and credit clause.[2] Nothing in G.L.c. 235, Sec. 23A precludes this court from giving full faith and credit to the judgment rendered by the Superior Court of New Jersey. See also McDade v. Moynihan, 330 Mass. 437, 442 (1953) (full faith and credit clause required court to enforce Pennsylvania judgment based on a confession of judgment even though Massachusetts law declared such provisions for confession of judgment void).
ORDER
For the foregoing reasons, plaintiffs motion for summary judgment is ALLOWED, and it is hereby ORDERED that judgment be entered in favor of plaintiff Claridge at Park Place, Inc. in the amount of $34,762.50 plus interest and costs.

At oral argument, Matellian advised the court that there was then pending another action against him brought by another New Jersey casino. Boardwalk Regency Corp. v. Matellian, Worcester Superior Court, Civil Action No. 92-2908. The court (Fecteau, J.) has since rendered findings and rulings in that action, finding that Matellian went to New Jersey on a regular basis over a period of several years and established lines of credit at some eight different casinos. In exchange for establishing those lines of credit, the casinos in *428 New Jersey provided Matellian with free transportation, meals and lodging. Matellian’s contacts with New Jersey apparently go way beyond his fall 1991 trip to Claridge’s casino.

That the term “foreign judgment” as used in Section 23A does not include judgments rendered by other states of the United States is reinforced by the first paragraph, which provides that “[t]he foreign judgment shall be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.” Id. Similarly, certain provisions of Section 23A could not possibly refer to judgments of sister states. For example, Section 23A provides that Massachusetts shall not recognize a foreign judgment if “judgments of this state are not recognized in the courts of the foreign state.” It also provides that a foreign judgment is not conclusive if “it was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.” These provisions would be pertinent in determining whether to enforce judgments rendered in a foreign countiy, but would be superfluous in recognizing the judgment rendered by a sister state.