822      83 Mass. App. Ct. 822 (2013)

Alford v. Thibault.

MARK ALFORD *vs.* WAYNE A. THIBAULT & others.[1]

No. 12-P-1184.

Essex. April 3, 2013. - June 27, 2013.

Present: GRASSO, KATZMANN, & GRAINGER, JJ.

*Real Property,* Condominium, Life estate, Remainder interests, Conveyance. *Devise and Legacy,* Remainder interests. *Damages,* Breach of fiduciary duty, Fraud. *Fiduciary. Fraud. Fraudulent Conveyance. Uniform Fraudulent Transfer Act. Condominiums.*

At the jury-waived trial of a civil complaint alleging breach of fiduciary duty, conspiracy to commit a breach of fiduciary duty, and fraudulent conveyance in relation to the sale of a condominium unit, the judge did not err in determining that the seller did not owe a fiduciary duty to the plaintiff, who had purchased the interest of the seller's coremainderman under a will, where the obligation of the seller (who was a life tenant under the will with an unfettered power of sale) to provide one-half of the net proceeds of any sale to the coremainderman did not hinder the seller's power of sale, and where the finding that the seller did not act in bad faith was not clearly erroneous [824-827]; further, the judge did not err in concluding that the sale of the property did not constitute a fraudulent transfer within the proscriptions of the Uniform Fraudulent Transfer Act, G. L. c. 109A, where, although the plaintiff was a creditor, the transfer did not result in a diminution of value available to the plaintiff, whose interest in the net proceeds was contingent on a sale [827-829].

CIVIL ACTION commenced in the Superior Court Department on March 17, 2009.

The case was heard by *Howard J. Whitehead,* J.

*Orestes G. Brown* for the plaintiff.

*Mary L. Cataudella* for Nathaniel Coughlin & another.

KATZMANN, J. In this case arising from the sale of a condominium unit, the plaintiff, Mark Alford, appeals from a judgment entered following a jury-waived trial before a judge of the Superior Court, dismissing his claims against the defendants,

___

[1]Nathaniel Coughlin and Elena Russo.

Wayne Thibault, the seller, and Nathaniel Coughlin and Elena Russo, the buyers, for breach of fiduciary duty and conspiracy to commit a breach of a fiduciary duty, and for fraudulent conveyance. We affirm.

*Background.* The condominium unit in issue (the property) is located in Newburyport (city). Thibault received a life estate in the property when his mother died in 1989. Thibault's mother devised a fee interest in the property to her daughter and to Thibault and his issue, subject to Thibault's life estate. As provided for in his mother's will, Thibault received the power to sell the property "in his absolute discretion . . . at such time, for such price, and upon such terms, including terms of credit, as he shall deem advisable." The will further stated that if Thibault sold the property, he was required to split the "net proceeds" of the sale with his sister as coremainderman. In addition, the will nominated Thibault as executor of the estate with "full power to sell any and all real or personal property at public or private sale."

After trial, the judge made the following findings. From 1989 to 2009, Thibault allowed the property to fall into significant disrepair. He failed to pay real estate taxes, water and sewer costs, condominium fees, and the mortgage. In all, there were encumbrances on the property totaling $97,051, with $88,802 representing a municipal tax lien. Due to the tax liabilities, the city initiated a tax taking action against the property and obtained a judgment foreclosing all rights of redemption in 2008. Aware of the impending tax taking and auction, Alford sought to purchase the property in order to renovate it and sell it for a profit. Alford purchased Thibault's sister's remainder interest in the property in 2008 for $500. With this interest in hand, Alford approached Thibault and offered to partner with him to repair the property, sell it, and then split the proceeds. Meanwhile, after learning that Thibault had a full power of sale, Coughlin also offered to purchase the property from Thibault. Shortly thereafter, unbeknownst to Alford, Thibault accepted Coughlin's offer and sold the property to Coughlin and Russo for $120,000 plus an additional $4,200 to cover Thibault's relocation costs. Proceeds from the sale were used to pay off the various encumbrances on the property, after which Thibault received net proceeds of

$26,400.93. Thibault did not comply with the terms of his mother's will and pay one-half of the "net proceeds" to the coremainderman, Alford. Thibault then fled and has not been located.

Alford initiated the instant action in March, 2009. After a jury-waived trial in October, 2011, the judge dismissed Alford's claims for breach of fiduciary duty, conspiracy to commit a breach of fiduciary duty, and fraudulent conveyance. The judge simultaneously awarded Alford $13,200.46, which amounted to his remainder interest in the property, and entered this amount as a judgment against Thibault. Alford timely appealed to this court.

*Discussion.* 1. *Fiduciary duty to remainderman.* On appeal, Alford argues that the trial judge committed error in determining that Thibault did not owe a fiduciary duty to Alford, his coremainderman. According to Alford, Thibault became a fiduciary at the moment that he invoked and exercised the power of sale provided for in his mother's will. More specifically, Alford argues that Thibault owed him a duty to maximize the price of the property at the time of the sale and that he breached this duty when he agreed to sell the property below market value. Alford requests that we exercise our "power to grant equitable relief when there has been a violation of fiduciary duty." *Demoulas* v. *Demoulas*, 428 Mass. 555, 580 (1998).

As the trial judge observed, "[t]he Court is unaware of any Massachusetts case that holds that, in his capacity as a life tenant, even one with a power of sale, Thibault owed a fiduciary duty to the remaindermen." We agree with the trial judge that in the circumstances of this case, the life tenant with an unfettered power of sale does not owe a fiduciary duty to the remaindermen with regard to the sale.[2]

As the recipient of the life estate, Thibault had an obligation

---

[2]Under his mother's will, Thibault was nominated as executor of the estate and also, separately, provided with power of sale over the property. The trial judge found that "Thibault's actions in selling the property were not undertaken in his capacity as fiduciary but, rather, as a devisee. That view finds some support in the fact that, in each of the documents which relate to the transfer, his signature is given in his individual capacity, not as the executor of the estate." We agree with the trial judge that Thibault executed the sale in his capacity as devisee rather than as executor. An executor owes a fiduciary duty

to "give effect to [his mother's] intent" as expressed in her will. See *Hershman-Tcherepnin* v. *Tcherepnin*, 452 Mass. 77, 84 (2008). In her will, Thibault's mother provided him with the following power of sale:

> "I authorize [Thibault] in his absolute discretion to sell [the] property or any portion thereof at such time, for such price, and upon such terms, including terms of credit, as he shall deem advisable. . . . [I]n the event [Thibault] shall sell said property, he shall retain one-half the net proceeds of sale as his absolutely and he shall pay over one-half of the net proceeds of sale to my . . . daughter, Joann L. Bothmann, if she shall be living at the time of said sale. In the event that my said daughter . . . shall not be living at the time of the sale of said property, one-half of the net proceeds of sale that she would otherwise have received shall pass to her issue by right of representation. The term 'net proceeds' as used in this paragraph shall be the gross sales proceeds less the normal closing costs and such attorneys' fees and real estate brokers' fees as may be expended in connection with said sale."

Thibault's mother did not place any conditions or limitations on Thibault's ability to sell the property; instead, his mother provided him with "absolute discretion to sell said property . . . for such price . . . as he shall deem advisable."

In order to comply with the terms of the will, Thibault had to (1) sell the property — he could not offer the property to someone as a gift, see *Merchants Trust Co.* v. *Russell*, 260 Mass. 162, 164 (1927); and (2) after selling the property, provide one-half of the "net proceeds" to the remainderman. While Thibault was required to make a payment to the remainderman, this condition did not hinder his power of sale. Rather, it affected his distribution of the proceeds. Thus, the will only limited Thibault's

___

to the beneficiaries of an estate. See *Onanian* v. *Leggat*, 2 Mass. App. Ct. 623, 625 (1974). However, "a party to a cause of action in his capacity as executor or administrator is a different person in law from the same individual when party to a cause of action in his private capacity. His identity is not the same. The different capacities create a diversity of personality with separate legal qualities." *Eaton* v. *Walker*, 244 Mass. 23, 31 (1923). In this case, Thibault conducted the sale in his individual capacity, and Alford sued Thibault in his individual capacity.

power of sale insofar as he had to actually sell the property. Compare *Lovett* v. *Farnham*, 169 Mass. 1, 6 (1897) (where testator did not provide life tenant with absolute discretion, for exercise of power of sale to be valid, it "must be founded upon a reasonable judgment dealing with existing facts and reasonable anticipations of the future, and having due regard for the purposes for which the power was given, and also for the rights of those whose interests are injuriously affected by its exercise"); *Stocker* v. *Foster*, 178 Mass. 591, 599 (1901) (life tenant restricted by will to sell estate only when it would be "conducive to his comfort"). Unlike in *Lovett*, where the court provided guidance in the absence of any directive on the power of sale, or in *Stocker*, where the court provided clarification on the meaning of a determinative, but potentially ambiguous, limiting principle on the power of sale, in this case the mother's will was sufficiently clear and unambiguous.

Apart from complying with the terms of the will, in exercising his power of sale, Thibault was required to act in good faith. See *Nunes* v. *Rogers*, 307 Mass. 438, 441 (1940), citing *Price* v. *Bassett*, 168 Mass. 598, 600-601 (1897). The trial judge found the fair market value of the property at the time of the sale in February, 2009, to be in the range of $190,000. As Thibault ultimately sold the property for $120,000, he sold it at roughly $70,000 below market value. The trial judge found that while the sale price "certainly raises an eyebrow, the Court cannot say that the price, alone, is evidence of bad faith." In support of this determination, the judge explained that Thibault sold the property under significant pressure due to the impending tax sale and that apart from Coughlin's offer, Thibault had only an offer from Alford that did not appear to be any better or more trustworthy. Therefore, the trial judge concluded that Thibault did not act in bad faith. We do not consider the judge's finding to be clearly erroneous and do not disturb his determination. See *T.W. Nickerson, Inc.* v. *Fleet Natl. Bank*, 456 Mass. 562, 569 (2010).[3]

Ultimately, as in this case, "where there is good faith and the

---

[3]While the sale may not have been in bad faith, the trial judge noted, and we agree, that Thibault's "absconding with the proceeds after the closing was undertaken in bad faith." However, as the judge went on to note, "that is an issue different from the sale price."

disposal is within the power [of sale], the remaindermen cannot successfully contest the transfer itself." *Nunes* v. *Rogers*, 307 Mass. at 442. See *Hoxie* v. *Finney*, 147 Mass. 616, 617-618 (1888). Thibault did not owe his coremainderman a fiduciary duty; rather, he was only obligated to comply with the terms of the will and to act in good faith. Accordingly, we agree with the trial judge that Alford cannot maintain an action against Thibault for breach of fiduciary duty. In light of this, neither can Alford maintain a cause of action against Coughlin and Russo for conspiracy to breach a fiduciary duty. We also agree that Thibault is liable under the express terms of the will to pay Alford $13,200.46, or one-half of the net proceeds from the sale of the property.

2. *Fraudulent transfer.* Alford further alleges that Thibault's sale of the property constituted a fraudulent transfer within the proscriptions of the Uniform Fraudulent Transfer Act (UFTA), G. L. c. 109A. In order to prevail on this claim, Alford must demonstrate (1) that he is a creditor and (2) that Thibault fraudulently transferred the property. See G. L. c. 109A, § 5. In the case of a fraudulent transfer, the UFTA provides for several possible remedies, including avoidance of the transfer, an attachment, an injunction, and "any other relief the circumstances may require." *Kraft Power Corp.* v. *Merrill*, 464 Mass. 145, 153 (2013), quoting from G. L. c. 109A, § 8.

As for the first element of a fraudulent conveyance claim, G. L. c. 109A, § 2, inserted by St. 1996, c. 157, defines a "creditor" as "a person who has [an independently valid] claim." *Kraft Power Corp.* v. *Merrill, supra.* A claim is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." G. L. c. 109A, § 2.

As for the second element in a claim for fraudulent conveyance, under § 5 of the UFTA, a transfer is fraudulent if a debtor makes a transfer either "(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor . . . (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his

ability to pay as they became due." G. L. c. 109A, § 5(*a*)(1), (2)(ii), inserted by St. 1996, c. 157. The UFTA suggests several factors (i.e., badges of fraud) that a court "may" consider to determine whether a debtor acted with "actual intent" to hinder, delay or defraud. See G. L. c. 109A, § 5(*b*)(1)-(11).[4]

In the case at bar, while Alford meets the first condition for a claim of fraudulent transfer as he is a creditor, we agree with the trial judge that he cannot meet the second condition and demonstrate a fraudulent transfer. A transfer, even if made with intent to defraud, is not deemed fraudulent in fact unless there has been a resulting diminution of the assets available to the creditor. See *Richman* v. *Leiser*, 18 Mass. App. Ct. 308, 312-313 (1984); *Shamrock, Inc.* v. *Federal Deposit Ins. Corp.*, 36 Mass. App. Ct. 162, 170 (1994); *Innis* v. *Robertson*, 67 Mass. App. Ct. 388, 391 (2006) ("We acknowledge the truth of the concept"). Similarly, "[w]here a creditor 'could not have reached the property before the conveyance, it follows that the conveyance itself could not have been fraudulent as to him,' notwithstanding the debtor's fraudulent intent." *Richman* v. *Leiser, supra* at 312, quoting from *Stauffer* v. *Stauffer*, 465 Pa. 558, 576 (1976). In this case, Alford possessed an interest in the property that was contingent upon Thibault's sale. It was only after the sale that Alford would receive his interest of one-half of the net proceeds; but for the sale, the city would have taken ownership of the property, and neither Thibault nor Alford would have received any compensation. Since the transfer did not result in a diminution of value, but rather created value, and since Alford could not reach the property prior to the contested transfer, we

---

[4]The UFTA outlines the following badges of fraud: "(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." G. L. c. 109A, § 5(*b*)(1)-(11).

agree with the trial judge that Alford cannot maintain an action for fraudulent transfer against Thibault.

*Judgment affirmed.*