Gordon, Robert B., J.
By motion filed on January 17, 2014, the defendant has moved to dismiss all three counts of the plaintiffs First Amended Complaint pursuant to Mass.R.Civ.R 12(b)(6). In the alternative, the defendant has moved for summary judgment pursuant to Mass.R.Civ.R 56. The plaintiff has opposed the motion. For the following reasons, the defendant’s motion is DENIED on all counts.
BACKGROUND
A. The Underlying Litigation
The underlying litigation in the instant matter began on April 14, 2006, when the defendant, Alyson H. Cohen (“Cohen”), filed a lawsuit against The Alfred & Adele Davis Academy, Inc. (“the Academy”) in the Superior Court of Fulton County, Georgia.[1] Approximately four months after the litigation was initiated, the Academy made an offer of judgment in the amount of $750. Cohen did not respond to this offer.
In Georgia, offers of judgment for settlement during litigation are governed by state statute. See O.C.G.A. §9-11-68.[2] According to the statute, if a defendant makes an offer of judgment in accordance with O.C.G.A. §9-1 l-68(a), and the plaintiff rejects it, then:
the defendant shall be entitled to recover reasonable attorneys fees and expenses of litigation incurred by the defendant or on the defendant’s behalf from the date of the rejection of the offer of settlement through the entry of judgment if the final judgment is one of no liabilily or the final judgment obtained by the plaintiff is less than 75 percent of such offer of settlement.
O.C.G.A. §9-ll-68(b)(l). The statute further provides that the trial court “shall order the payment of attorneys fees and expenses of litigation upon receipt of proof that the judgment is one to which the provisions of . . . [section 9-1 l-68(b)(l)] . . . apply.” O.C.G.A. §9-ll-68(d)(l). However, if the court determines that the offer was not made in good faith, the court “may disallow an award of attorneys fees and costs.” O.C.G.A. §9-11-68(d)(2).
After Cohen failed to respond to the Academy’s offer of settlement, the Academy filed a motion for summary judgment, which the trial court granted. Cohen appealed the summary judgment order, but later dismissed her appeal. Following the entry of summary judgment in its favor, the Academy filed a motion for attorneys fees and litigation expenses pursuant to O.C.G.A. §9-11-68. Cohen opposed the Academy’s *395 motion, and argued that the offer of settlement had not been made in good faith and should thus not activate the assessment of fees and costs. On May 14, 2010, the trial court granted the Academy’s motion, and ordered Cohen to pay $84,104.63 in attorneys fees and expenses of litigation to the Academy (hereinafter referred to as “the Judgment”). Cohen appealed from the Judgment on multiple grounds, all of which were rejected by the Court of Appeals of Georgia on June 17, 2011. See Cohen v. The Alfred and Adele Davis Academy, Inc., 714 S.E.2d 350, 351-53 (Ga.App. 2011) (affirming award of fees and costs to the Academy).
B. The Instant Case
On January 13, 2014, the plaintiff in the present action, Utica Mutual Insurance Co. (“Utica”), filed a “First Amended Complaint — Suit on Judgment” with this Court, seeking an order recognizing and enforcing the Judgment. What follows is a recitation of those facts alleged in the Complaint that plausibly suggest an entitlement to relief, taking them as true for the purposes of ruling on the defendant’s motion to dismiss. See Lopez v. Commonwealth, 463 Mass. 696, 699 (2012); Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008).
The plaintiff incurred $84,104.63 in legal fees and costs to defend the Academy in the underlying litigation. This is the amount of the Judgment in issue. On April 19, 2013, the Academy assigned its right to enforce the Judgment against Cohen to the plaintiff. The plaintiff is duly licensed to insure risks in the Commonwealth, has a principal place of business in Utica, New York, and maintains a regional office in Wakefield, Massachusetts. The defendant, Allyson H. Cohen, is a resident of Grafton, Massachusetts, and the reach and apply defendant, Daniel Jacob (“Jacob”), is the defendant’s husband and resides with Cohen in Grafton. (Am. Compl. ¶¶ 2-3, 14.)
On May 4, 2010, the defendant acquired a piece of real estate located at 3 Valley View Drive in Grafton, Massachusetts (“the Property”) in consideration of her payment of Five Hundred Sevenly-Five Thousand Five Hundred Dollars ($575,500.00) to the seller. On May 11, 2010, the defendant recorded a declaration of an estate of homestead in the Property. On May 14, 2010, the Judgment was entered against the defendant in the underlying litigation. On June 28, 2010, the defendant conveyed her interest in the Property to her husband for One Dollar ($1.00) (hereinafter referred to as the “2010 Conveyance”).
On June 17, 2011, the Georgia Court of Appeals affirmed the Judgment entered against the defendant in the underlying litigation, and denied a petition for reconsideration two days later.[3] On November 22, 2011, Jacob conveyed his interest in the Property to himself and the defendant, to have and to hold as married tenants by the entirety, for One Dollar ($1.00) (hereinafter referred to as the “2011 Conveyance”). On that same day, the defendant and Jacob recorded a declaration of estate of homestead for the Property.
DISCUSSION
I. Legal Standard
Under Rule 12(b)(6) of the Massachusetts Rules of Civil Procedure, courts must dismiss a claim that fails to present a set of facts that would entitle the plaintiff to relief. Mass.R.Civ.P. 12(b)(6), as amended by 365 Mass. 754 (1974). In determining whether the claims in a plaintiffs complaint are sufficient to survive a motion to dismiss, courts must accept as true “the factual allegations in the plaintiffs complaint, as well as any favorable inferences reasonably drawn from them.” Lopez v. Commonwealth, 463 Mass. 696, 700 (2012), quoting Ginther v. Comm’r of Ins., 427 Mass. 319, 322 (1998). Although detailed factual allegations are not required, a valid claim must consist of more than mere labels or legal conclusions cast in the form of factual allegations. Id. at 701; Schaer v. Brandeis University, 432 Mass. 474, 477-78 (2000). Rather, the factual allegations of the claim must rise above a speculative level, plausibly suggesting an entitlement to relief. Lopez, 463 Mass. at 701; Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
II. Count I: Asserting Recognition and Enforcement of the Judgment
In Count I of the Amended Complaint, the plaintiff seeks recognition and enforcement of the Judgment under G.L.c. 235, §23A (“Section 23A”), which provides a statutory vehicle for enforcing monetary judgments obtained in foreign states. See G.L.c. 235, §23A. Having considered the matter, it is this Court’s view that Section 23A furnishes no basis to enforce a judgment obtained in the court of another state of the United States. Instead, such a judgment is properly enforced under the Full Faith and Credit Clause of Article IV, §1 of the United States Constitution, and Section 1738 of Title 28 of the United States Code.
A. Constitutional Recognition of the Judgment in Massachusetts
‘The Constitution’s Full Faith and Credit Clause provides [that] ‘Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. ’ ” Baker v. General Motors Corp., 522 U.S. 222, 231 (1998), quoting Article IV, §1 of the United States Constitution. “Pursuant to that Clause, Congress has prescribed [that] ‘[s]uch acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States ... as they have by law and usage in the courts of such state . . . from which they are taken.” Id. at 231-32, quoting 28 U.S.C. §1738. “A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.” Id. at 233.
“There is no question that the firll faith and credit clause . . . requires Massachusetts courts to recognize a *396 final judgment obtained in another State as long as the judgment-rendering State possessed personal jurisdiction over the parties and jurisdiction over the subject matter of the action in which the judgment was rendered.” Bishins v. Mateer, 61 Mass.App.Ct. 423, 428 (2004); accord Heron v. Heron, 428 Mass. 537, 538-39 (1998). In the absence of such a jurisdictional defense, Massachusetts will recognize and enforce another state’s judgment. See Shapiro Equip. Corp. v. Morris & Son Constr. Corp., 369 Mass. 968, 969 (1976) (in light of defendant’s failure to assert specific facts that would raise the issue of lack of jurisdiction, Massachusetts court recognized and enforced Connecticut judgment for damages); First Nat’l Bark of Houma v. Bailey, 29 Mass.App.Ct. 190, 197 (1990) (in “absence of certain defenses directed at the validity of a final judgment of a sister State . .. , Massachusetts will recognize and enforce that judgment”).
In the present case, the defendant has not raised any jurisdictional issue in regard to the Judgment. Although neither the Full Faith and Credit Clause nor 28 U.S.C. §1738 is specifically mentioned in the Amended Complaint as grounds for recognition and enforcement of the Judgment, the facts alleged by the plaintiff amply support such a claim in this Court. See Heron, 428 Mass. at 539; Bishins, 61 Mass.App.Ct. at 428 (Florida final judgment of foreclosure entitled to full faith and credit in Massachusetts because Florida court had jurisdiction over appellants as a result of voluntary appearance). Recognizing that courts should be generous in permitting the amendment of defective pleadings, the plaintiff should amend its First Amended Complaint to assert a Full Faith and Credit claim in accordance with the relevant portions of this opinion. See Stolzoff v. Waste Sys. Int'l Inc., 58 Mass.App.Ct. 747, 764-65 (2003).
It should also be noted that although this Court acknowledges the existence of a “penal exception” to the Full Faith and Credit Clause,[4] in which states are not required to recognize sister state judgments that are “penal” in nature, the existence of such an exception does not affect the outcome of the defendant’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). See Nelson v. George, 399 U.S. 224, 229 (1970), citing Huntington v. Attrill, 146 U.S. 657 (1892); see also Oats v. Whittaker, 18 Mass. L. Rptr. 637, at *17 (2005) (Lauriat, J.); Town of Harrison, 1997 Mass.App.Div. 37, at *39 (1997). Accepting the factual allegations in the plaintiffs complaint as true, as well as drawing all favorable inferences therefrom, the plaintiff has alleged facts sufficient to state a claim upon which relief may be granted.[5] See Mass.R.Civ.P. 12(b)(6).
B. Enforcing Foreign Judgments under G.L.c. 235, §23A
As set forth ante, enforcement of a judgment from another state of the United States is not the province of a state statute, but is instead the subject of federal constitutional and statutory mandate. See 28 U.S.C. §1738; Oats v. Whittaker, 18 Mass. L. Rptr. 637, at *6 (2005). It is the opinion of this Court that invoking G.L.c. 235, §23A to enforce a judgment from another state of the United States is both unnecessary and, for the reasons which follow, inappropriate.
A judgment obtained in another state of the United States is commonly referred to as a the judgment of a “sister state.” See, e.g., Tupman Thurlow Co. v. Woolf International Corp., 43 Mass.App.Ct. 334, 337 (1997) (“In the absence of certain defenses directed at the validity of a final judgment of a sister state, Massachusetts will recognize and enforce that judgment”); Houma v. Bailey, 29 Mass.App.Ct. 193, 197 (1990), citing Restatement (Second) of Conflict of Laws §100 (1971) (“A valid judgment for the payment of money rendered in a State of the United States will be enforced in a sister State”).
In Count I of the Amended Complaint, plaintiff seeks enforcement of the Georgia Judgment pursuant to G.L.c. 235, Sec. 23A. The final paragraph of Section 23A defines “foreign judgment” as “any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters.” G.L.c. 235, §23A. A “foreign state” is defined as “any governmental unit other than the United States, or any state, district, commonwealth, territoiy, insular possession thereof, or the Panama Canal Zone, the Trust Territoiy of the Pacific Islands, or the Ryukyu Islands.” Id. (emphasis added). The use of the word “thereof’ unmistakably refers back to the United States itself; so a foreign judgment is that of any governmental unit other than the United States, or any state, district, commonwealth, territoiy, or insular possession of the United States. See Claridge v. Matellian, 5 Mass. L. Rptr. 426, at *5 (1996) (Sosman, J.) (only reported decision directly interpreting statutoiy definition of “foreign judgment”).
Construing the definition of a “foreign judgment” not to include judgments from sister states is consistent with the independently established law that judgments from sister states are already recognized under the Full Faith and Credit clause of the U.S. Constitution and 28 U.S.C. 1738. See Bishins, 61 Mass.App.Ct. at 428; Claridge, 5 Mass. L. Rptr. at *5. See also Provencal v. Commonwealth Health Ins. Connector Auth., 456 Mass. 506, 513-14 (2010), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001) (“statutoiy language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result”). The definitional difference between a foreign judgment and the judgment of a sister state is further suggested by the language used in the first paragraph of Section 23A, which provides that “the foreign judgment shall be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.” G.L.c. 235, §23A; see also Claridge, 5 Mass. L. Rptr. at *5. Statutes generally not to be construed as tautologies, this language, at the veiy least, indicates that the definition of a “foreign judgment” was in *397 tended to mean something separate and distinct from the judgment of a sister state. See id. at *5 n.2.
Reinforcing this conclusion, other prominent provisions of Section 23A could not possibly refer to the judgments of sister states. Id. For example, paragraph three of Section 23A provides that Massachusetts shall not recognize a foreign judgment if “judgments of this state are not recognized in the courts of the foreign state,” or if it was “rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.” See G.L.c. 235, §23A. While these statutory provisions would be “pertinent in determining whether to enforce judgments rendered in a foreign country,” they would be “superfluous in recognizing the judgment rendered by a sister state.” Claridge, 5 Mass. L. Rptr. at *5 n.2.[6]
The foregoing interpretation of Section 23A is additionally supported by the better reasoned case law within this Court. See Oats v. Whittaker, 18 Mass. L. Rptr. 637 (2005) (declaring enforcement of sister state judgments not to be a function of state statute, and holding Texas judgment not a foreign judgment within the reach of Section 23A); C.F. Trust, Inc. v. Peterson, 6 Mass. L. Rptr. 505 (1997) (Roseman, J.) (explicitly stating that Virginia judgment is unenforceable under Section 23A because, “on its face, 23A does not apply to judgments of sister states”). In Claridge v. Matellian, supra, the plaintiff sought to enforce a judgment under Section 23A that had been issued by the Superior Court of New Jersey regarding a debt the defendant had incurred at a local casino. Claridge, 5 Mass. L. Rptr. at *4-5. The defendant argued that the judgment was unenforceable, because Section 23A contained an exception to the enforceability of judgments that, like gambling (at the time), were repugnant to the public policy of Massachusetts. Id. The Court found that the defendant’s arguments ignored the definition of foreign judgment within the statute, but that the judgment was ultimately enforceable under the Full Faith and Credit clause of the U.S. Constitution. Id at *5. Similarly, in Town of Harrison v. Aldenberg, supra, the defendant argued that a Maine judgment for attorneys fees and costs was unenforceable under the excepting language of Section 23A which barred enforcement of judgments in the nature of a “fine or other penalty.” Town of Harrison v. Aldenberg, 1997 Mass.App.Div. 37, 38-39 (1997). As in Claridge, however, the Court ruled that the defense under Section 23A was “patently inapplicable ... for the simple reason that the Maine judgment at issue is the judgment of a sister state rather than the judgment of a foreign state or country.” Id at *39.
Although several reported decisions of the Superior Court have ruled otherwise, none contain the analytical understructure to provide edifying precedent. In Caffrey v. Bradstreet, 19 Mass. L. Rptr. 552 (2005) (Fecteau, J.), for example, the Court simply assumed that Section 23A was the appropriate vehicle for enforcing a judgment from Texas, and focused its analysis on whether the judgment was punitive in nature
or repugnant to public policy within the exception language of the statute. Id. at *1-4. Similarly, in Riva Holmes-Marc v. Support Management, Inc., 31 Mass. L. Rptr. 378 (2013) (Krupp, J.), the Court stated in explicit terms that a foreign judgment is defined to include judgments issued by other states. Id. at *6. However, the Court offered no explanation or reasoning to support this summary conclusion, and quickly moved on to consider whether the Florida judgment was enforceable against a third party that was not party to the initial proceedings. See id. at *6-8.[7]
For the foregoing reasons, and subject to the anticipated amendment of the Complaint to assert this claim under the Full Faith and Credit clause of the Constitution, the defendant’s motion to dismiss Count I of the Amended Complaint is DENIED. So much of Count I of the existing Amended Complaint that purports to assert an enforcement of judgment claim under G.L.c. 235, Sec. 23A, however, is ALLOWED.
III. Count II: Enforcing the Judgment under the Principles of Comity
In Count II of the Amended Complaint, the plaintiff asserts that, even if the Judgment were not specifically recognized under Count I,[8] the Judgment should nonetheless receive full recognition and enforcement pursuant to traditional principles of interstate comity. If the Judgment is ultimately recognized and enforced under principles of full faith and credit, recognition under the principles of interstate comity would be duplicative and unnecessary. If, however, the Judgment were ultimately found to be “penal” in nature and thus unenforceable in Massachusetts, the plaintiff may still be able to obtain recognition and enforcement of the Judgment within the Commonwealth under principles of interstate comity. See Delk v. Gonzalez, 421 Mass. 525, 530 (1995); Oats, 18 Mass. L. Rptr. at *17.
‘That the Full Faith and Credit Clause may not require Massachusetts to recognize the [Judgment] at issue herein does not. . . compel the conclusion that Massachusetts could not elect to do so.” See Town of Harrison, 1997 Mass.App.Div. at *40. “Principles of comity permit the voluntary recognition and enforcement of the judicial proceedings of another State, provided that a State’s own citizens are not unfairly prejudiced thereby, and a State’s public policies are not impaired.” Cote-Whitacre v. Dep’t of Public Health, 446 Mass. 350, 360 (2006) (internal citations omitted). This authority leaves open the distinct possibility that this Court could voluntarily elect to recognize and enforce the Judgment, even in the absence of a constitutional mandate. See Oats, 18 Mass. L. Rptr. at *17 (although Full Faith and Credit clause did not require recognition of a ‘Texas penal judgment,” Court ultimately enforced the judgment under principles of comity); Town of Harrison, 1997 Mass.App.Div. at *40 (Maine judgment that included attorneys fees fell within exception to Full Faith and Credit clause, but principles of interstate comity permitted voluntary recognition).
*398 Accordingly, the defendant’s motion to dismiss Count II of the Amended Complaint is DENIED.
IV. Count III: Fraudulent Transfer and Fraudulent Declaration of Homestead
Broadly construed, Count III of the Amended Complaint claims that each of (i) the May 11,2010 declaration of homestead recorded by the defendant, (ii) the 2010 Conveyance, (iii) the 2011 Conveyance, and/or (iv) the November 22, 2011 declaration of homestead, were made by the defendant in an effort to hinder, delay or defraud the plaintiff and therefore constitute fraudulent transfers under G.L.c. 109A. On this basis, the plaintiff maintains that, even if a valid estate of homestead exists on the Property, it does not forbid the plaintiff from accessing such real estate to satisfy the Judgment. In support of this contention, the plaintiff argues that the defendant’s conduct in the underlying litigation falls within one of the exceptions to the homestead statute, which will not protect the execution of a judgment that is “based upon fraud, mistake, duress, undue influence or lack of capacity.” (Pl.’s Opp’n at 12.) More specifically, the plaintiff asserts that the defendant’s failure to respond to the Academy’s offer of judgment within 30 days of its making, the basis upon which the Georgia court ordered fees and costs under its statute, constituted a “mistake.”
A. Neither Declaration of Homestead Constitutes a Fraudulent Conveyance
“Homestead laws are designed to benefit the homestead declarant and his or her family by protecting the family residence from the claims of creditors.” Shamban v. Maidslover, 429 Mass. 50, 53 (1999). An estate of homestead shall be “exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies . . .” G.L.c. 188, §3(b) (identical language used in former G.L.c. 188, §1, repealed by 2010 Mass. Acts, c. 395).[9] “Homestead laws are based on public policy that favors preservation of the family home regardless of the householder’s financial condition.” Id. In light of the public policy and purpose behind the homestead statute, this Court has construed homestead exemptions liberally in favor of debtors. Id.
In Massachusetts, a declaration of homestead cannot be considered a fraudulent conveyance. Rafuse v. Stryker, 27 Mass. L. Rptr. 95, at *24-25 (2010) (Fremont-Smith, J.); Russell v. Black, 2000 Mass.Super. LEXIS 350, *7-8 (August 1, 2000) (Sosman, J.); see also In re Lyons, 355 B.R. 387, 390 (D.Bankr.Mass. 2006). ‘The use of a lawful device that the legislature made available for the express purpose of exempting certain assets from the reach of creditors should not be set aside as a ‘fraudulent conveyance’ merely because the homeowner intended to put his homestead beyond the reach of creditors.” Russell, 2000 Mass.Super. LEXIS, at *7-8; see also In re Miller, 113 B.R. 98, 104 (D.Bankr.Mass. 1990) (the “veiy purpose of the homestead law is to put the homestead beyond the reach of creditors . . . The debtor can hardly be faulted for doing what the law permits that individual to do”).
In the instant case, the plaintiff identifies two declarations of homestead: the first recorded solely by defendant Cohen on May 11, 2010; and the second recorded by both the defendant and her husband as tenants by the entirety on November 22, 2011. In accordance with the foregoing authorities, however, neither recording of homestead can be considered a fraudulent transfer under the statute, regardless of whether the current or former version of G.L.c. 188 is applied. See Rafuse, 27 Mass. L. Rptr. at *24-25 (2010) (immaterial that defendant chose to record homestead exemption one day before plaintiff obtained judgment); see also In re Feiner, 2005 Bankr. LEXIS 2509, at *7-8 (March 7, 2005) (finding homestead declaration valid even though recorded on the eve of bankruptcy).
B. Whether the Facts Alleged Regarding the 2010 Conveyance Constitute a Claim for Fraudulent Transfer
The plaintiff maintains that the 2010 Conveyance, in which defendant Cohen conveyed the Property to her husband on June 28, 2010, constitutes a fraudulent transfer under G.L.c. 109A, because it was allegedly made in an effort to hinder, delay, defraud and protect the Property from being accessed to satisfy the Judgment. Because this conveyance occurred prior the enactment of the current homestead statute, the former G.L.c. 188, §7(1) governs. See In re Jones, 467 B.R. 256, 257-58 (D.Bankr.Mass. 2011) (former G.L.c. 188, §7(1) applies to conveyance that occurred before new statute enacted). The relevant subsection of this statute provides that an estate of homestead may be terminated by “a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner’s spouse, if any, which does not specifically reserve said estate of homestead.” See former G.L.c. 188, §7(1), repealed by 2010 Mass. Acts, c. 395. Accordingly, the law requires that two conditions be met for an effective termination of homestead: (1) the conveyance of property in which a homestead exists, and (2) the absence of a reservation of the homestead. See id.; Atlantic Savings Bank v. Metropolitan Bank and Trust Co., 9 Mass.App.Ct. 286, 288-90 (1980); see also Hildebrandt v. Collins, 320 B.R. 40, 44 (B.A.P. 1st Cir. 2005).[10]
Taking the factual allegations in the Amended Complaint as true, as well as all favorable inferences that may be drawn from them, the 2010 Conveyance could have terminated the estate of homestead if the homestead was not specifically reserved. See former G.L.c. 188, §7(1), repealed by 2010 Mass. Acts, c. 395; Atlantic Savings Bank, 9 Mass.App.Ct. at 288-90. Upon the termination of homestead, the Properly would no longer be exempt from “the laws of conveyance, devise, attachment, levy on execution and sale for payment of debts or legacies,” thus rendering the Properly susceptible to the plaintiffs claims of fraudulent transfer.
*399 The Fraudulent Transfer Act is a statute designed to prevent debtors from effecting collusive or otherwise fraudulent conveyances of their assets to third parties with the intent of hindering, delaying, defrauding or otherwise thwarting the rights of creditors by placing such assets beyond their reach. See G.L.c. 109A, §5(a)(l) (“A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor. . .”). See also First Fed. Sav. and Loan Ass’n of Galion, Ohio v. Napoleon, 428 Mass. 371, 378 (1998) (‘The purpose of the statute is to preserve a debtor’s assets so that creditors may look to them in the event that the debtor ceases payments or is declared bankrupt”). In order to prevail on its fraudulent transfer claim, the plaintiff must demonstrate (1) that the plaintiff is a creditor and (2) that the defendant fraudulently transferred the Property. Alford v. Thibault, 83 Mass.App.Ct. 822, 827 (2013). Regarding the first element of the claim, a creditor is defined as a person who has an independently valid claim, and a claim is defined as ‘a right to payment whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.’ “ Id, at 827, quoting G.L.c. 109A §2; see also Kraft Power Corp. v. Merrill 464 Mass. 145, 153 (2013). Regarding the second element of the claim, ”a transfer is fraudulent if a debtor makes a transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Alford, 83 Mass.App.Ct. at 827, quoting G.L.c. 109A, §5(a)(l). The statute does not define a “fraudulent transfer” elementally, but instead recites a non-exhaustive set of considerations or “factors (ie., badges of fraud) that a court ‘may’ consider to determine whether a debtor [has acted] with ‘actual intent’ to hinder, delay or defraud.” Id. at 827-28, citing G.L.c. 109A, §5(b)(l)-(ll).[11]
Assuming as the Court must for purposes of the present motion that, under the former version of G.L.c. 188, the 2010 Conveyance would have terminated the homestead and thereby left it vulnerable to “laws of conveyance,” see ante, the plaintiff has alleged sufficient facts to support its claim that the 2010 Conveyance constituted a fraudulent transfer under the statute. See G.L.c. 109A, §5(b)(l)-(l 1); former G.L.c. 188, §7. As to the first element necessary to constitute a fraudulent conveyance, the fact that the plaintiff obtained the right to enforce the Judgment against the defendant is enough for the former to be properly considered a “creditor,” the defendant a “debtor,” and the Judgment an independently valid “claim” under the statute. See Kraft, 464 Mass. at 153-55. As for the second element necessary for a fraudulent transfer, the factual allegations detailing the timing of the initial purchase of the Property, the date the Judgment was issued, the date of the 2010 Conveyance itself, the relationship between the conveyancing parties, and the amount of consideration for the transfer, taken together and considered in light of the indicia of fraud set forth in G.L.c. 109, §5(b), more than suffice to make out a claim. See G.L.c. 109, §5(b)(l)-(ll). Having thus alleged sufficient facts to establish both elements of a claim of fraudulent transfer under Chápter 109A, the defendant’s motion to dismiss Count III of the Amended Complaint must be DENIED.[12]
C. Other Issues
The defendant argues that, even assuming the 2010 Conveyance was fraudulent, Count III should still be dismissed. According to the defendant, if the conveyance was found to be fraudulent, title would merely revert back to Cohen along with the estate of homestead she originally recorded on May 11, 2010. This reversion, the defendant insists, would protect her from any subsequent challenge by the plaintiff under the laws of conveyance. However, the appropriate remedy for a fraudulent transfer does not automatically result in a reversion of both title and the estate of homestead. See G.L.c. 109A, §§8-9; Kraft Power Corp. v. Merrill, 464 Mass. 145, 153 (2013). Rather, the statute “provides for several possible remedies, including, inter alia, avoidance of the transfer, an attachment, an injunction, and ‘any other relief the circumstances may require’ ”; Kraft, 464 Mass. at 153, quoting G.L.c. 109A §8; and the Court enjoys broad authority to fashion an appropriate remedy from among the available options set forth in the statute. See Rivera v. Club Caravan, Inc., IT Mass.App.Ct. 17, 26-27 (2010); Ostrer-Potapov v. Sherman, 81 Mass.App.Ct. 1134 (2012), 2012 Mass.App.Unpub. LEXIS 600, at *4. Therefore, the defendant’s assertion that both title and the homestead would automatically revert back to Cohen upon a finding that the 2010 Conveyance was fraudulent is unavailing, and will not bar the plaintiff from bringing forth its claim in Count III.
The defendant additionally argues that the plaintiffs fraudulent transfer claim should be dismissed because it was not pleaded with the level of particularity required by Mass.R.Civ.P. 9(b). This Court does not agree. “Under Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), circumstances constituting fraud must be stated with particularity.” Nota Constr. Corp. v. Keyes Assocs., 45 Mass.App.Ct. 15, 16 (1998). Claims are pleaded with sufficient particularity when they put the defendants on notice as to and adequately warn them of the circumstances giving rise to the claim, including the identity of the parties involved, the particular conduct giving rise to the alleged fraud, where and when it took place, and the harm that resulted. See Equip & Sys. For Indus, v. Northmeadows Constr. Co., 59 Mass.App.Ct. 931, 931-32 (2003); Nota Constr. Corp., 45 Mass.App.Ct. at 16; see also Citizens Barde of Mass. v. Grand St. Parkway, LLC, 21 Mass. L. Rptr. 594, *6 (2006) (Lu, J.) (claims pleaded with sufficient particularity when they place defendant on notice “as to the who, what, when and where” thereof). In the present case, the plaintiffs claims are asserted in the Complaint with sufficient particularity, as they clearly *400 identify both the defendant and the factual circumstances surrounding her purportedly fraudulent conveyance. The defendant’s Motion to Dismiss Count III must, therefore, be DENIED. See Mass.R.Civ.P. 9(b); Nota Constr. Corp., 45 Mass.App.Ct. at 16.
ORDER
For the foregoing reasons, all three counts of the defendant’s Motion to Dismiss are hereby DENIED.

Allyson H. Cohen, Plaintiff v. The Alfred and Adele Davis Academy et al., Defendants, Civil Action File No. 2006-CV-11568.

Georgia’s offer of judgment statute was enacted as part of a larger Tort Reform Act of 2005.

On November 30, 2011, the Supreme Court of Georgia denied Cohen’s petition for a writ of certiorari in the underlying litigation. On April 30, 2012, the Supreme Court of the United States denied the defendant’s federal petition for a writ of certiorari, and on June 18, 2012 the Court denied the defendant’s petition for rehearing.

Under the “penal exception” to the Full Faith and Credit Clause, a state is not required to enforce the penal judgment of another state. See Nelson v. George, 399 U.S. 224, 229 (1970); Huntington v. Attrill, 146 U.S. 657 (1892). The foundational case on this issue is Huntington, where the Court, after recognizing the “elastic” meaning and use of the words “penal” and “penalty,” set out a definition of the word “penal.” Id. at 667. Whether a statute or judgment is “penal” in nature “depends upon the question whether its purpose is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act.” Huntington, 146 U.S. at 673-74; see also Philadelphia v. Austin, 86 N.J. 55, 59 (1981) (the punishment of a public offense is “characteristic of a penal law”; it is intended to redress a public wrong). This exception “applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violation of its statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties." Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 290 (1888).

Moreover, even if the Judgment were ultimately determined to be “penal" in nature and thus fell within the exception to the Full Faith and Credit Clause, which seems open to serious question, see Smith v. Baptiste, 694 S.E.2d 83, 88 (Ga. 2010) (describing purpose of Georgia’s offer of judgment statute in non-punitive terms — viz., “to encourage litigants in tort cases to make and accept good faith settlement proposals”), this Court would in all events have discretion to recognize the Judgment in accordance with principles of interstate comity. See infra, Section III.

It should also be noted that there is pending legislation before the General Court that would revise the law recognizing foreign judgments. If enacted, this revision will clarify the definition of foreign judgments, and specifically change the name of the statute to the Uniform Foreign-Country Money Judgments Recognition Act. Consistent with this Court’s construction of the existing law, a foreign country is defined in the bill as any government other than the United States, or a “state, district, commonwealth, territory, or insular possession of the United States.” 2013 Bill Text MAH.B. 35.

While it is true that other reported decisions imply that Section 23A may be used to enforce the judgment of a sister state, none of these cases directly address the definition of a “foreign judgment," or square the statute with the Constitution’s Full Faith and Credit clause. Instead, the courts in these cases simply assume the applicability of Section 23A, and then proceed to analyze the claims on other grounds. See, e.g., Comm'r of Taxation & Finance v. Pelletier, 16 Mass. L. Rptr. 584 (2002) (Troy, J.) (assuming Section 23A applied, Court determined that New York tax judgment was not enforceable in Massachusetts because Section 23A explicitly prohibits enforcement of tax judgments); Titan PRT Systems, Inc. v. Fabian, 6 Mass. L. Rptr. 345 (1997) (Sikora, J.) (assuming Section 23A applied, Court focused on whether New Jersey judgment was punitive and repugnant to public policy).

In the Amended Complaint, the plaintiff asserts a claim for recognition and enforcement of the Judgment under G.L.c. 235, §23A. Once again, however, this Court assumes that Count I will be amended to assert the recognition and enforcement of the Judgment under constitutional principles of full faith and credit.

General Laws Chapter 188 was amended and recodified in 2010, and went into effect on March 16, 2011. Any application of the statute to facts occurring prior to the 2010 amendment will hereinafter be referred to as “the former G.L.c. 188."

G.L.c. 109A, §1 defines conveyance as “including every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance.” According to Black’s Law Dictionary at 357 (8th ed. 2004), “conveyance” means “to transfer or deliver (something such as a right or property) to another, esp. by deed or other writing; esp., to perform an act that is intended to create one or more property interests, regardless of whether the act is actually effective to create those interests.”

 These factors include whether “(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor’s assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider to the debtor.” G.L.c. 109A, §5(b)(l)-(ll).

Because the facts alleged regarding the 2010 Conveyance are sufficient to support the plaintiffs claim in Count III, the Court, at this time, need not determine whether the facts alleged regarding the 2011 Conveyance support a claim for fraudulent transfer. However, it should be noted that estates of homestead at the time of the 2011 Conveyance would be governed by the current version of the statute, which provides that estates of homestead in effect on March 16, 2011 “shall continue in full force and effect notwithstanding the repeal of any law under which they were created and shall be governed by this act. . .” St. 2010, c. 395, §3. Therefore, if the estate of homestead was in fact preserved by the 2010 Conveyance and existed through the 2011 Conveyance, any subsequent termination of the homestead based on the 2011 Conveyance would be governed by the current version of the statute. See G.L.c. 188, §10(b). Under the current version of the statute, “[n]o deed between spouses or former spouses ... shall terminate the homestead unless each . . . spouse [or] former spouse ... entitled to the benefit of the homestead has executed an express release thereof. . .” G.L.c. 188, § 10(b).